[Civ. No. 369.   Fourth Appellate District.—April 29, 1932.]

W. L. BASHFORD, Plaintiff and Respondent, v. A. LEVY & J. ZENTNER CO. (a Corporation), Appellant; W. L. BASHFORD et al., Cross-Defendants and Respondents.

H. A. Savage and Gilbert H. Jertberg for Appellant.

Fernard de Journel and Louis C. Levy for Respondents.

MARKS, J.—Plaintiff instituted this action to recover damages for an alleged breach of a written contract. The case was tried before a jury, which returned a verdict in favor of the plaintiff in the sum of $6,632.38. Defendant is here on appeal from the judgment which was entered upon this verdict.

The record is a large one and many grounds are presented upon which it is urged that the judgment must be reversed. A number of them depend upon an asserted partnership which defendant maintains existed between the cross-defendants during all times material to this action. ▇ Our task in deciding this case can be shortened by our first considering this question of partnership as we have concluded that the pleadings do not present any issue of such a relation existing between the cross-defendants and, therefore, that the trial court committed no error in excluding evidence of its existence and damages which defendant asserted it suffered by actions of Sawyer, one of the supposed partners.

On May 3, 1929, plaintiff and defendant entered into a written contract, the material parts of which are as follows: "Memorandum of agreement made and entered into 3rd day of May, 1929, by and between A. Levy & J. Zentner Co., Fresno Shipping Division, Fresno, Calif., party of the first part, and W. L. Bashford, of Fresno, Calif., party of the second part. Witnesseth: Second party agrees to solicit fresh deciduous fruits and grapes for first party, on terms and contracts furnished by first party; pack and load same in refrigerator cars, during season 1929, all at the expense of second party. It is agreed that first party shall pay second party the regular commercial packing rates for the several varieties secured, packed and loaded; specifically set forth hereunder, to-wit: (Unit prices follow) Second party guarantees above prices to be in line with packing charge made by Pacific Fruit Exchange, California Fruit Exchange, Stewart Fruit Co., and other legitimate consignment dealers. It is understood and agreed that above charges include all

costs of securing the fruit, material, labor, warehouse rental, and equipment, and that packing charges are payable to second party when cars are loaded and billing surrendered to first party. First party agrees that second party shall have the packing and loading of all fruits secured from growers for first party in the San Joaquin Valley, tributary to the following loading stations: Visalia, Hanford, Dinuba, Parlier, Sanger (or vicinity), Fresno (Levy Zentner Warehouse). First party agrees to advance to second party a sufficient amount weekly to cover soliciting expenses, house equipment, field boxes, etc., and not less than $100.00 weekly, if needed, this advance to be charged to second party and deducted from packing charges at the rate of $50.00 per car. (Signed) A. Levy & J. Zentner Co., Fresno Shipping Division, By H. I. Lewis, Mgr. (party of the first part), (signed) W. L. Bashford, By W. L. Bashford (party of the second part)."

It is alleged in the complaint and established by the evidence that the plaintiff secured packing-houses, material, equipment, supplies and labor to perform his part of the contract and, upon instructions from the defendant, entered upon the performance of his obligations under the contract about June 10, 1929; that on July 9, 1929, the defendant notified plaintiff that he had violated the provisions of his contract and thereafter refused to permit him to perform, which caused him the damage claimed. The answer denied many of the allegations of the complaint and in a separate defense alleged that its refusal to permit the plaintiff to perform after July 9, 1929, was due to and excused by many serious breaches of the contract by Bashford and Sawyer. It sought to recover damages against the cross-defendants under the allegations of the cross-complaint in which the same breaches of the contract were alleged as in the answer. A copy of the contract was attached to each pleading we have mentioned.

The allegations under which defendant claims the right to have introduced evidence of a partnership are found in the separate defense of the answer and in the cross-complaint. In the answer it is alleged: "That at the time said agreement, Exhibit 'A', was entered into, the said plaintiff did represent to defendant that one M. L. Sawyer and plaintiff were partners in the business arrangement under-

taken by said Exhibit 'A', and that said M. L. Sawyer would continue to be a partner of plaintiff and would loyally and continuously work with plaintiff as a partner, and give defendant the benefit of his ability and acquaintance with farmers and fruit conditions in the districts covered by said agreement; that plaintiff then and there represented to defendant that the said M. L. Sawyer was a silent partner and could not sign the contract for the reason that certain litigation and claims were pending against him and that the said Sawyer was owing certain moneys, and the creditors of said Sawyer might interrupt the arrangement set forth in Exhibit 'A'.'' The substance of this allegation is repeated in the cross-complaint with ''cross-defendants'' used instead of ''plaintiff'' and plurals substituted for the singular where necessary. It is obvious that these portions of the pleadings fail to allege that a partnership existed between Bashford and Sawyer. These misrepresentations, if they are such, are immaterial because no damages are predicated upon them in either of the pleadings.

The cross-complaint contains the following allegation, from which a joint liability of Bashford and Sawyer might be inferred had the exhibit not been attached to the pleading and made a part thereof by reference: ''That heretofore and on or about the 3rd day of May, 1929, the parties hereto entered into that certain memorandum of agreement attached hereto and made a part hereof and marked Exhibit 'A'.'' The exhibit ''A'' referred to is the contract between Bashford and the defendant from which we have already quoted. It was not signed by Sawyer and in the absence of any other allegation from which it might appear that Bashford acted for Sawyer in signing the contract it nullified the allegation of the pleading that Sawyer entered into the agreement.

The rule that the allegations of a pleading which are negatived by the express and certain language of a written instrument set forth therein, or made a part thereof by reference, are to be disregarded was recognized by the early case of *Stoddard* v. *Treadwell,* 26 Cal. 294, where it was said: ''The complaint not only sets out the contract *in haec verba,* but contains a statement of its legal effect according to the views of the pleader; and it is insisted that the consideration upon which the promises of the defendants, for breaches of

which the counts respectively proceed, has been misapprehended in that statement. Should all this be conceded, still the erroneous version of the pleader may be rejected as surplusage, for the true relations of the different parts of the contract to each other are disclosed by the contract itself. A contract may be declared on according to its legal effect or *in haec verba*. If the former mode should be adopted, then the defendant may by the rules of the common law in a proper case crave *oyer* of the instrument, and if it appear that its provisions have been misstated, he might set out the contract *in haec verba* and demur on the ground of the variance. But where a plaintiff himself sets forth the contract in the terms in which it is written, and then proceeds by averment to put a false construction upon the terms, the allegations, as repugnant to the terms, should be regarded as surplusage, to be struck out on motion. *Utile per inutile non vitiatur*. (1 Ch. Pl. 232.)''

This case was cited with approval in *Silvers* v. *Grossman*, 183 Cal. 696 [192 Pac. 534], and in *Peak* v. *Republic Truck Sales Corp.*, 194 Cal. 782 [232 Pac. 948, 950], where it was said: ''It may be said in this connection that when a pleader sets forth in his pleading what he either admits or alleges to be the substance or legal effect of an instrument in writing and in the same pleading sets forth *in haec verba* the written instrument itself, if the latter is unambiguous (183 Cal. 701 [192 Pac. 534]), the matter in the pleading inconsistent with the text of the writing will be treated as surplusage.''

The pleadings do not present the issue of a partnership existing between Bashford and Sawyer. Alleged violations by Sawyer of the duty which an agent owes his principal, and the rulings of the trial court in refusing to admit evidence proffered by the cross-complainant of the existence of a partnership relation between the two cross-defendants, were, therefore, not prejudicial and need not be further considered by us. This leaves for our consideration the question of whether or not Bashford violated the duties which an agent owes to his principal to such an extent that the defendant was justified in terminating the agency and ending Bashford's rights under the agreement. These alleged breaches are numerous and fall into somewhat similar classes, so we need only consider one out of each class typically illustrative of the question here involved.

■ The defendant maintains that the plaintiff purchased fruit for it at a price in excess of the amount specified by its managing agent as the maximum price to be offered to the growers. It should be observed that of the numerous contracts for the purchase of fruit of which the defendant complains under this specification of error, Bashford testified that a number of them were not executed by himself or his agents, and that the fruit was purchased and the contracts made by the managing agent of the defendant or his agents without the knowledge or consent of Bashford. Of course this evidence, although contradicted by other witnesses, furnished sufficient reason for the elimination of these purchases from consideration by the jury as indicating a breach of duty by Bashford. If he or his agents did not make these contracts and did not purchase the fruit described in them, he could not have violated any instructions as to the maximum price to be paid for the fruit. The jury accepted his testimony as true and we are bound by its finding, where there is a conflict in the evidence.

■ The plaintiff did purchase plums from one George Albert Smith for more than the maximum price set by the defendant. The fruit was accepted, shipped and paid for by defendant. The matter was thoroughly considered and discussed by Bashford and defendant's managing agent and the breach waived. The defendant maintains that Bashford purchased other plums at a price of five dollars per ton more than that specified. Bashford testified that the managing agent of the defendant instructed him in connection with these purchases that "He was willing to pay the same as any other legitimate shipper in the deal"; that other legitimate shippers were paying the higher price for the plums at the time of his purchase for defendant. This created a conflict in the evidence which the jury resolved in favor of the plaintiff.

■ The defendant maintains that Bashford bought many more carloads of peaches than he was instructed to purchase and as the market price for the fruit dropped, serious loss was caused to the defendant. Bashford denied this and testified that he purchased less peaches than the maximum number of cars he was permitted to purchase under the instructions of defendant's managing agent. The jury evidently accepted Bashford's testimony as true.

The defendant complains because of the purchase of 200 tons of peaches from one Ayers for $50 per ton plus $1.25 for hauling contrary to specific instructions concerning this crop. The written contract covering the purchase of this crop was introduced in evidence. The purchase price therein specified was $50 per ton with nothing said about hauling. It is shown by the evidence that the refusal of defendant to pay the hauling charge was communicated to Ayers and that Bashford agreed to personally pay this charge if it were not otherwise paid. This occurred before the written contract was signed and it is evident that Bashford did not obligate defendant to pay this hauling charge. We know of no rule of law, and there is certainly nothing in the contract, that would prohibit Bashford from personally paying these hauling charges if he desired to do so.

The defendant maintains that there was poor packing of grapes, plums and peaches, and that the piling of boxes of peaches on top of each other caused damage to the fruit, the exact extent of which does not appear. It should be observed that all the fruit packed by Bashford passed official inspection. The defendant's witnesses testified that in perfect packing of fruit the defects complained of would not occur. They also testified that a perfect pack was never obtained in the best regulated houses and that similar defects in packing and handling fruits were apparent in all packs. The plaintiff was required to use ordinary care, skill and prudence in handling and packing the fruit but was not required to produce a perfect pack where such results were not obtained in the district by the best and most careful and skilful packers. The jury was justified in concluding from the evidence that Bashford packed and handled the fruit with due care and skill; that the results obtained by him were equal to those of the best packers of fresh fruit in the district; and that the few defects in his packing and handling of the fruit shown by the evidence furnished no sufficient ground for the defendant discharging him and terminating the contract.

The defendant next complains of the failure to pack seventy-five crates of plums for shipment to San Francisco by truck and thence by boat to Honolulu. The order to pack these plums was given to Sawyer and not to Bashford, who knew nothing about the matter until the next day. As

a matter of fact, the plums were actually packed late in the day the order was given Sawyer and were shipped according to the original plan.

■. The defendant complains of what it terms "The unloading of peaches purchased by Sawyer and Copa de Ora Fruit Company onto A. Levy & J. Zentner Co., at a time when the market had broken badly", and, "the loading of Levy & Zentner peaches in Copa de Ora boxes". An examination of the record discloses that the defendant did not permit Bashford to use its Fresno warehouse and that with its knowledge he packed fruit at a packing-house used by Sawyer and the Copa de Ora Fruit Company; that through a mistake of an employee the fruit in question was received on the tags of the defendant and paid for by it; that as soon as Sawyer learned of the mistake he immediately repaid the defendant all of the money which it had paid out for this fruit. The money was accepted by the defendant and the mistake was rectified by this payment.

■ The defendant attempted to introduce evidence of a conversation between its managing agent and Bashford and Sawyer which occurred after the execution of the contract of May 3, 1929, wherein it was claimed that the agent told them that they were to solicit and buy fruit for the defendant exclusively. This evidence was excluded. Under the pleadings and evidence the defendant and cross-complainant was not entitled to any relief against Sawyer and the correctness of the ruling in so far as it affected evidence against him is not open to question. Bashford had a written contract with the defendant that did not provide that he should work exclusively for it. "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." (Sec. 1698, Civ. Code.) Just what the defendant expected to prove by the evidence which was excluded does not appear from the record. It does not intimate that the contract of May 3d was modified by another written agreement. It did not offer to prove that it had been modified by an executed oral agreement. The trial court admitted evidence which showed that Bashford did not solicit, buy or pack any fruit for any person, association or corporation other than defendant until after July 9, 1929, when the defendant dispensed with his services. We find no error in this ruling of the court.

■ The defendant assigns as error the ruling of the trial court in admitting in evidence proof of loss of profits to the plaintiff on fruit purchased by and packed for it at points named in the contract of May 3, 1929, after July 9th, and during the season of 1929, urging that this damage was not within the issues of the pleadings. We cannot agree with this contention. It clearly appears that the plaintiff entered on the performance of his duties on June 10, 1929, and was prevented from further performance by action of the defendant on July 9, 1929. He was paid in full for his services to the latter date. The gist of his action was damages for breach of the contract. These damages consisted in the loss of profits on the fruit to be packed between July 9th and the end of the season of 1929. The contract clearly and definitely provided that Bashford "shall have the packing and loading of all fruits secured from growers for first party (defendant) in the San Joaquin Valley, tributary" to named points. Under this contract he was entitled to pack and load the fruit in question or collect his profits on such operations unless his dismissal by the defendant was justified. The jury decided that this dismissal was not justified, and we think correctly so.

■ The defendant complains of a ruling of the trial court sustaining objections to the introduction of evidence by it in support of the allegations of its cross-complaint as to the extent of the damages suffered by it because of the alleged breach of contract by the plaintiff. Counsel for both parties have devoted much energy to a technical discussion of the cross-complaint, whether general or special damages are alleged and whether the plaintiff could lawfully demand a bill of particulars from the defendant setting forth the detailed items of damage it claimed to have suffered. We do not find it necessary to consider and decide these questions. The defendant's right to recover on its cross-complaint depended on whether or not there had been a breach of the contract by Bashford. The jury by its verdict decided that the contract had not been breached by Bashford but had been violated by the defendant and cross-complainant. As Bashford had not broken his contract he could not be held to respond in damages in any amount to the cross-complainant. Therefore the amount of their alleged damages

became immaterial. This ruling of the trial court, though erroneous, was not prejudicial.

The other errors of which the defendant complains are so similar to those we have already considered that no good purpose could be served by discussing them in detail here. This would unnecessarily extend the length of this opinion.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 26, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 28, 1932.