[Civ. No. 11691. First Dist., Div. Two. Sept. 3, 1941.]

ALPHONZO E. BELL CORPORATION (a Corporation), Plaintiff and Respondent, v. BELL VIEW OIL SYNDICATE et al., Defendants and Respondents; GUY S. RILEY et al., Appellants; UNION OIL COMPANY OF CALIFORNIA (a Corporation) et al., Interveners and Respondents.

Mott and Grant, J. Edw. Haley and Howard A. Grant for Appellants.

Overton, Lyman & Plumb, Eugene Overton and Donald H. Ford for Plaintiff and Respondent.

Haight, Trippet & Syvertson, Raymond Haight and Arthur L. Syvertson for Defendants and Respondents.

Paul M. Gregg, Andrews & Kline, Mortimer Kline, G. P. Adams, Philip S. Dickinson, Hill, Morgan & Bledsoe and Kenneth Wright for Interveners and Respondents.

NOURSE, P. J.—The litigation involved in this appeal relates to the controversies among the owners and lease holders of certain oil bearing properties, and the trustees and unit holders of interests in a business or commercial trust created for the purpose of operating part of the property involved. It was begun by the Bell corporation to restrain the alleged unlawful trespass of these trustees by which they were alleged to have abstracted large quantities of valuable oil from the plaintiff's property by means of "slant" wells. A recapitulation of a part of the history of the litigation is given in an appendix to respondents' brief from which we quote:

"The original complaint in this action was filed on June 22, 1935. Plaintiff, Alphonzo E. Bell Corporation, is a land owner in the Santa Fe Springs oil field. Defendant, Bell View Oil Syndicate, a common-law trust, through its three trustees, defendants Hooper C. Dunbar, Craig C. Horton and Gordon B. Morris, owns a small parcel of land lying to the southwest of the property of plaintiff. In the original

complaint, in addition to the Syndicate and the trustees, the unit holders thereof were made parties defendant and Union Oil Company of California, the lessee of Alphonzo E. Bell Corporation, was made a nominal party defendant, after having failed, upon request, to join as a party plaintiff.

"Demurrers to this complaint were interposed by defendants and the demurrer of certain defendant unit holders was sustained without leave to amend. An appeal from the judgment of dismissal in behalf of the unit holder, following that order was taken in L. A. No. 15658 (3rd Civil 5926) and the District Court of Appeal reversed said judgment and ruling on demurrer, which decision is reported in 24 Cal. App. (2d) at page 746 [76 Pac. (2d) 166].

"While the above appeal was pending plaintiffs amended their complaint and at approximately this time interveners Emma J. Alexander, et al., plaintiffs in intervention, and Union Oil Company of California, defendant in intervention, intervened in the action. (Interveners are respectively lessors and lessee of a parcel of real property that lies between the property of Alphonzo E. Bell corporation and of the Bell View Oil Syndicate.) New demurrers were filed and sustained without leave to amend. Thereafter Union Oil Company of California appeared in the action and, with Alphonzo E. Bell Corporation, joined in a motion for leave to file an amended complaint, despite the prior ruling on demurrer. The interveners Emma J. Alexander, et al., also asked leave to amend their complaint. The motions were heard by a new and different judge, the judge hearing the prior demurrers having resigned from the bench. After hearing, the motion of Alphonzo E. Bell Corporation and Union Oil Company was granted but that of interveners was denied on the grounds that their interest was not such as to warrant intervention. Interveners appealed from the following judgment of dismissal, L. A. No. 15948 (3rd Civil No. 5927) and the judgment of the District Court of Appeal reversing said ruling is reported in 24 Cal. App. (2d) 587 [76 Pac. (2d) 167]. Plaintiffs Alphonzo E. Bell Corporation and Union Oil Company filed their amended complaint and a demurrer thereto was sustained as to plaintiff Union Oil Company, without leave to amend. Union appealed from the dismissal following this ruling, L. A. No. 16061 (3rd Civil No. 5928) and the judgment of the District Court of

Appeal reversing that judgment is reported in 24 Cal. App. (2d) at page 747 [76 Pac. (2d) 166].

"Alphonzo E. Bell Corporation thereupon filed a new complaint which was again demurred to, which demurrer was sustained without leave to amend. An appeal was taken from the judgment of dismissal following this ruling, L. A. No. 16263 (3rd Civil No. 5929) and the decision of the District Court of Appeal reversing said ruling is reported in 24 Cal. App. (2d) at page 748 [76 Pac. (2d) 166].

"The four appeals above referred to, although reported separately, were as a matter of fact, consolidated and were heard by the same court and at the same time. The four decisions above recited were made on January 27, 1938. Thereafter, the Supreme Court on March 28, 1938, denied a petition to have the cause heard by it.

"After the remittiturs of the above referred to appeals had been returned, proceedings were had in the Superior Court of the State of California, in and for the County of Los Angeles designed to clarify the proceedings, and prior to the time fixed for defendants to answer, interveners Riley and Brenneman asked leave and were granted on June 3, 1938, the right to intervene in the present proceedings."

After this complaint in intervention was filed the appellants herein were granted leave to file a supplemental complaint alleging that, since the dates of filing of their original complaint the trustees of the Bell View Oil Syndicate had entered into a compromise and settlement of the litigation with the original plaintiff and the other interveners under which they had paid to those claimants the sum of $450,000, and taken a dismissal of all the causes pending. They asked judgment against all parties for restoration of this sum to the trust estate. Demurrers to the amended and supplemental complaints, based upon both general and special grounds, were sustained without leave to amend. No request to amend was made, but these interveners have appealed from the judgment of dismissal based upon the ruling on the demurrers.

The appellants rest their appeal upon the two inquiries— whether a trust estate can be held liable for damage caused by tort of its trustees, and whether the trustees may use trust funds in settlement of claims made by third parties based upon such damage. The respondents, who are the

original plaintiffs, the interveners other than these appellants, the Bell View Oil Syndicate and its three trustees, disagree with this statement of the issues and state a multitude of questions which they contend present the issues involved but which need not be repeated as we will confine our discussion to such points as we deem determinative of the appeal.

The appellants argue that, since the trust estate is not liable for the tortious acts of its trustees, and cannot be sued upon such liability, the use of trust funds to settle the litigation was beyond the powers of the trustees. The argument is based upon two false premises—a trust estate *may* be liable for such acts under certain circumstances; the liability of this estate to be sued therefor has been determined on the former appeal and this is the law of the case. The power of the trustees to make the compromise is expressly conferred by the trust indenture.

The question whether this trust estate may be sued for damages arising in this manner cannot be determined upon the authorities relating to fiduciary trusts alone, and as to such trusts, the rule of nonliability is not absolute. Thus a fiduciary trust estate may be required to respond in damages for the trustee's tortious act to the extent that the estate has been enriched by such act. This principle is stated in *Brownfield* v. *McFadden,* 21 Cal. App. (2d) 208, 216 [68 Pac. (2d) 993], in this language: "As the trust estate has been thus enriched by the loan it would seem there should be a moral obligation on its part to repay the loan. . . . If this is true the general assets of the trust estate should be held liable for the payment of the note and judgment upon it. . . . The executor had actual notice of this order and the estate should not be permitted to accept its benefits and escape its burdens." The principle is based upon the maxim of jurisprudence stated in section 3521 of our Civil Code: "He who takes the benefit must bear the burden."

The appellants argue that this principle is not applicable here because their complaint in intervention does not specifically allege that the trust estate was enriched by the acts of its trustees. The third amended complaint of the Bell Corporation, suing the trust estate as well as the trustees and the beneficiaries, alleged that these "defendants well knew that it was probable that said well would depart from within the confines of said Bell View property and enter

into and trespass upon the property of others; That in drilling and deepening said well said defendants were required to use such care as was necessary to prevent said well from departing from within the confines of said Bell View property . . . that nevertheless, the said defendants and each thereof failed and neglected to exercise such care and in utter disregard of the rights of plaintiff permitted said well to enter into and beneath the property of plaintiff and to penetrate and to produce from the oil and gas deposits and measures contained in the Bell property.'' It is further alleged that, through these and other similar operations these defendants removed from beneath the plaintiff's property more than two million barrels of oil to the damage of the plaintiff of more than three million dollars. These allegations have not been denied by any of the parties to the proceeding. The appellants' complaint in intervention does not controvert them. In this respect the appellants have followed the none too commendable practice of avoiding allegations of the true facts in order to escape demurrer. It is inconceivable that, if this sum of more than three million dollars was received by the trustees and no part of it passed over to the trust estate, these appellants would not have instituted proceedings to call the trustees to account and would not have been forced to pursue the highly doubtful remedy which they here assert. And of course if it were true that any portion of the converted oil went to enrich the trust estate the principle above noted would foreclose the proceeding. In any event, since the action instituted by the Bell Corporation was dismissed and.ended as to all defendants—the trust estate, the trustees, and the unit holders—before appellants' amended and supplemental complaint was filed it must be presumed that the trust estate and the unit holders secured a substantial benefit from the settlement which must be restored before the present action can be maintained. That is to say, there being no fraud, deceit or bad faith charged in the settlement, the appellants cannot sue to recover it for themselves without restoring the benefits which they received from the settlement and dismissal of the action.

　　█　But, assuming that the question of failure of restoration is not presented on the demurrers, appellants are faced with the obstacle that the trust estate is nevertheless responsible for the alleged acts of conversion. The third amended

complaint of the original plaintiff alleged that the Bell View Oil Syndicate ''was and now is an association of two or more persons transacting business under the name of Bell View Oil Syndicate; that the Bell View Oil Syndicate is what is commonly referred to as a Massachusetts or common law trust; that defendants Hooper C. Dunbar, Gordon B. Morris and Craig C. Horton are, and at all times herein mentioned were trustees of said Bell View Oil Syndicate. . . . '' The appellants concede that such was the character of the trust. But they argue that the trustees were without right to drill the wells, that the trust estate was not a party capable of being sued in court, and that the trustees were without power to defend the estate in court, and hence, without power to compromise and settle the litigation. All these conclusions of the pleader are contrary to the express terms of the instrument creating the trust which is pleaded in full and made a part of the complaint. Under these circumstances the court will, in hearing on the demurrer, examine the exhibits and treat the pleader's conclusions as surplusage. (*National Pavements Corp.* v. *Hutchinson Co.*, 132 Cal. App. 235, 238 [22 Pac. (2d) 568], citing *Peak* v. *Republic Truck Sales Corp.*, 194 Cal. 782, 790 [230 Pac. 948], and *Bashford* v. *Levy & J. Zentner Co.*, 123 Cal. App. 204, 210 [11 Pac. (2d) 51].)

Turning to the trust indenture we find that the trustees are given express power to develop and operate oil properties and wells ''in the name of the Bell View Oil Syndicate''; to ''exercise the exclusive management and control of the trust estate''; and to ''employ counsel to begin, prosecute, defend or settle law suits, at law, in equity or otherwise, and to compromise or refer to arbitration, *any claims in favor of or against the trust.*'' (Emphasis ours.)

As a business or commercial trust the unit holders made up ''an association of two or more persons transacting business under the name of Bell View Oil Syndicate.'' This is the manner in which the trust, the trustees, and the unit holders were sued in the original proceeding. Section 388 of the Code of Civil Procedure provides that when ''two or more persons, associated in any business, transact such business under a common name . . . the associates may be sued by such common name. . . . '' The practice was approved in *Jardine* v. *Superior Court*, 213 Cal. 301, 317, 320 [2 Pac. (2d) 756, 79 A. L. R. 291], where the supreme court used the fol-

lowing language which is pertinent here: "The question is not whether the members secure for themselves any profits, present or prospective, *but whether there is a business.* Here we have a business, and one which earns large profits. If they are not the profits of the members individually, they must be the profits of the association itself, and such is, indeed, the fact. No amount of theoretical argument can escape the fact that money is being received for services rendered, and that the money so received and the property purchased with it is held by trustees for the association." (Emphasis ours.) All the pleadings, as well as the trust indenture, disclose that the oil syndicate was a "business." If there is any sanctity around a Massachusetts, or common law trust, which permits it to engage in business and earn large profits free from judicial control we do not know upon what legal or moral foundation the principle is based.

██ But aside from the question of the right to sue the syndicate for the alleged tort (and here it should be borne in mind that the original plaintiff had prayed for injunctive relief, both restrictive and mandatory, and for an accounting as well as damages for the tort), appellants are faced with an obstacle which no amount of argument can overcome. That is the admitted fact that the syndicate and its unit holders were sued along with the trustees, that the latter defended in the name of the syndicate, and the appellate court ruled that a good cause of action was stated against all the defendants. It is of no avail to appellants that the capacity of the syndicate to be sued for the alleged tort *may* not have been raised by the previous demurrers. It is sufficient that the original complaint pleaded all the facts relative to the acts of the syndicate through its trustees which would have been necessary to raise the same issue which appellants now assert and that these appellants had the opportunity at that time to raise it. ██ It is the settled rule that whatever issue was actually and necessarily included in a former judgment will be deemed to have been adjudged thereby. (Code of Civil Procedure, section 1911.) It is equally well settled that a party cannot try his case by piecemeal. ██ These appellants as unit holders were parties to the original proceeding in the District Court of Appeal wherein the order sustaining their demurrer was overruled. It does not appear from the decision on that appeal whether this particular question was raised, but it might have been, and if it has any

foundation it should have been. Sufficient to say that the reversal was on the ground that the plaintiff pleaded a cause of action showing that all defendants, including the syndicate trust, were liable. As such it is a final judgment upon all issues relating to the legal liability of all defendants under the facts pleaded. (*Neale* v. *Morrow,* 163 Cal. 445, 448 [125 Pac. 1052].) That judgment must in this proceeding be treated as the law of the case. (2 Cal. Jur. 944, 945; *Goland* v. *Peter Nolan & Co.,* 15 Cal. App. (2d) 696, 700 [60 Pac. (2d) 183] ; *United Dredging Co.* v. *Industrial Acc. Com.,* 208 Cal. 705, 712 [284 Pac. 922].)

For these reasons it follows, without citation of authority, that since the syndicate and all its unit holders were in court to answer a complaint which had been held good against them, the trustees were authorized, under the express provisions of the trust indenture, to compromise and settle that litigation. In legal effect the appellants' complaint in intervention pleads that the trustees did that, and nothing more. There is no charge of fraud, misrepresentation, or bad faith. There is no charge that the trustees, in making the settlement, abused their discretion—other than the implied charge that they should have again endeavored to litigate the question whether the complaint pleaded a cause of action against the syndicate. The demurrers to their complaint and supplemental complaint were properly sustained.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 30, 1941. Edmonds, J., did not participate therein.