[Civ. No. 20784.   Second Dist., Div. One.   July 6, 1955.]

MAGNETTA McGUIRE ZELLERS, Appellant, v. STATE OF CALIFORNIA et al., Defendants; S. L. CHOWNING et al., Respondents.

J. B. Bradley and Glen A. Duke for Appellant.

Moss, Lyon & Dunn, Arvin H. Brown, Jr., and Henry F. Walker for Respondents.

WHITE, P. J.—Plaintiff instituted this action against the above named defendants for injunctive relief and/or damages. On motion of defendants State of California and California Highway Commission the action was dismissed as to them and they are not involved in this appeal.

The complaint is based on the alleged tort of defendants Chowning and Oscar Oberg, Seth A. Oberg; Oscar Oberg and Seth A. Oberg, doing business as Oberg Bros. Construction Company (hereinafter referred to as defendants Oberg) in the placing of earth on plaintiff's property outside of the area authorized in a written agreement between her and defendant Chowning. The complaint contained two counts and prayed for a mandatory injunction to compel defendants to remove all materials placed upon plaintiff's land and restore the same to its original condition; for damages in the sum of $10,000 for loss of use of the land; for $10,000 punitive damages, or in the alternative, for general damages in the sum of $35,000, and for punitive damages in the sum of $10,000. No briefs have been filed on behalf of defendant Chowning.

So far as necessary for a determination of the issues raised on this appeal, the following will serve as an epitome of the factual background surrounding this litigation. Plaintiff and defendant Chowning were the owners of adjacent tracts of land in the Hollywood Hills section of the city of Los Angeles. Mrs. Zellers' property lies to the north of that of Mr. Chowning, and except for a portion along the common boundary line, was and is generaly higher than that of Mr. Chowning. During the first part of the year 1950, defendant Chowning commenced to develop his lot, and attempted to purchase a portion of appellant's land in connection with this development. No satisfactory agreement with respect to a sale was ever arrived at and defendant Chowning suggested to plaintiff that he fill portions of her land in connection with the contemplated development of his tract, which development called for considerable filling to bring his lot up to a level established by a hand ball court on the southeast part of Mrs. Zellers' lot. An agreement was prepared by Mrs. Zellers' attorney, authorizing Mr. Chowning to extend his fill over on to Mrs. Zellers' lot and "to grade said fill to

the level of the fill on the adjoining land of Second Party (Chowning)." This agreement was signed by both parties on June 12, 1950. Mr. Chowning proceeded with the development and the first portion of the fill was made by a contractor by the name of Hickey. Hickey was unsuccessful on a bid on an earth removing job, and after placing some earth on the property, was unable to proceed further. Thereafter, defendant Chowning called in defendants Oberg, who took over the job and continued the filling. They, at defendant Chowning's direction, filled above the level set forth in the written agreement until stopped by Mrs. Zellers.

Some 20,000 cubic yards of earth were placed on plaintiff's property outside the portion thereof provided for in the contract and was not placed on plaintiff's property pursuant to her "explicit directions or at her specific request."

Following trial before the court sitting without a jury judgment was rendered against defendant Chowning directing that he construct a retaining wall and a drainage collection and discharge system in connection with the fill and in accordance with specifications set forth in said judgment. The judgment further provided that plaintiff recover nothing from defendants Oberg.

Plaintiff appeals from the judgment in favor of defendants Oberg and from that portion of the judgment in favor of plaintiff and against defendant Chowning which denied plaintiff a mandatory injunction, damages, "or any relief for earth placed upon her real property above the level established on the defendant S. L. Chowning's property."

The court made findings that, while the fill (above the level established on the property of defendant Chowning, and being the only fill involved in this appeal) was not within that provided for in the contract and was not placed on plaintiff's property pursuant to her "explicit direction or instruction or under plaintiff's supervision or at her specific request," nevertheless it is true "that plaintiff knew that this fill was being made and that she did not object to the same until September 13, 1951, at which time this fill was approximately three-fourth complete, and at which time she stopped the work," and it was concluded that, although Chowning's acts in this regard were wilful and the Obergs were negligent trespassers, "plaintiff impliedly consented to their acts upon said portion of her land and therefore said acts were done under an implied license."

On appeal, appellant contends that the foregoing findings

by the court that there was an implied license from appellant to respondents to make the fill on her land above the level established on the land of respondent Chowning is not supported by the evidence and is against law.

There seems to be little if any difference between the parties as to the definition of an implied license and the words, acts, conduct or passive acquiescence necessary to create the same. In the early case of *Weldon* v. *Philadelphia, W. & B. R. Co.* (1899), 2 Penn. (Del.) 1 [43 A. 156, 159] it is said:

" 'An implied license is one which is presumed to have been given from the words, acts or passive acquiescence of the party authorized to give it.' 2 Bouv. Law Dict. 222. Such a license must be established by proof, and it is not to be inferred from equivocal declaration or acts of the owner of the land. *Pennsylvania P. & B. R. Co.* v. *Trimmer* (N.J.Ch.), 31 A. 310."

And in Restatement of Law of Property, comment "c," page 3129, section 516, we find the following:

"c. Manifestation of consent. The consent from which a license arises may be manifested by conduct of any kind. The manifestation may consist in the use of language, or in conduct other than the use of language. Such conduct may consist of acts indicative of a consent by the actor to the use of his land by another, or it may consist in failure to take reasonable action when inaction may reasonably lead to an inference of consent."

Appellant's argument seemingly overlooks the firmly established and recognized rule that the court on appeal will not attempt to determine the weight of the evidence but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found to warrant in this case, the inference of an implied license from appellant. Before the judgment arrived at by the duly constituted arbiter of the facts can be set aside on appeal upon the ground of "insufficiency of the evidence" it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. We are not authorized to retry the cause, reweigh the evidence, and draw inferences contrary to those drawn by the trial court (*Dawson* v. *Williams,* 127 Cal.App.2d 38, 43 [273 P.2d 75]; *Sukiasian* v. *Shakarian,* 115 Cal.App.2d 798, 801 [252 P.2d 956]). As was so cogently stated by our Supreme Court in *Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]: "It is an ele-

mentary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. (Citing cases.)''

Keeping these well-settled rules in mind we turn to a review of the evidence, which an examination of the record shows was fairly epitomized by the learned trial judge in his ''Memorandum Re Ruling,'' which was brought up on this appeal, and which reads in part as follows:

''She (appellant) testified that she did not know of the excessive fill until the morning of the day on which it was finished. But it is impossible to accept this assertion. She lived on Lot 1 and testified that the highest part of her property could be seen from the area back of her handball court; if so, the fill in the ravine would be equally visible. She went to work every day, going and returning in the daylight, and she traveled along Canyon Drive past Mr. French's house. The lots north and south of the French home were vacant, and the fill was plainly visible from the street as she passed by. 'The law presumes that a person possessing normal faculties of sight and hearing must have seen and heard that which was within the range of his sight and hearing,' *Young* v. *Southern Pac. Co.*, 189 Cal. [746] at 754 [210 P. 259]. Normal curiosity would have led her to actual knowledge of what was happening upon her property during the period of six weeks when it was being filled (see Civ. Code, § 19). It is true that she was greatly perturbed at the time. Her father was dying of cancer, her husband suffering from severe heart trouble and expected, from time to time, to die at once. She was running his business, with which she had little familiarity, and was undoubtedly in a chaotic state of mind. So worried was she that her mind naturally would have extended to the further worry as to what was happening to her property under the direction of a man of Mr. Chowning's known pertinacity. The only fair inference seems to be that she was so upset that she has now forgotten numerous things that she knew in 1950. Moreover, self-interest subconsciously led her, as it did Mr. Chowning, to testify to some things which the court cannot wholly accept. Upon cross-examina-

tion during the presentation of her main case, Mrs. Zellers told the court of a conversation with defendant Chowning, had within 30 days after the contract was made, in which she asked him how much higher the fill would go; she said she was then standing behind her handball court. Upon rebuttal she denied having any conversation with Chowning at any time between the signing of the contract and the day the fill was completed, thus denying her own previous testimony. But that is not all.

"Mr. Persh and Mr. Belden, both of whom seem to be disinterested and credible witnesses, testified that they saw her upon the property while the filling was going on. Mr. Persh, who lived at upper Graciosa, said that while the trucks were dumping material from the top of the ravine near that point, he saw Mrs. Zellers upon the property watching the process, and that this occurred two or three times, that she was on the lower part looking around, and also on the upper part while the dumping was going on at the Graciosa level. Mr. Belden, who was field superintendent for Hickey Bros., testified that on one occasion in June, 1950, he and Mr. Chowning had been at the top of the hill, walked down and met Mrs. Zellers about two-thirds of the way down; that Mr. Chowning told her Belden was the man that would make the fill; that Zellers and Chowning walked away together; and at that time dumping from the top of the canyon had been in progress and there were some seven or eight thousand yards of fill in the ravine, the greatest depth thereof being approximately 15 feet.

"The preponderance of the evidence is to the effect that Mrs. Zellers knew what was going on, and made no objection although she could have forbidden and stopped it at any time. A license to use real property may be made by parol or proved by circumstances such as tacit permission or acquiescence in acts already done (63 C.J. § 113, p. 956; 37 C.J. § 177, p. 283; 53 C.J.S. § 80, p. 807, § 81, p. 809; Rest. Law of Property, § 516, comment c, p. 3129; 33 Am.Jur., § 92, p. 400; . . ."

In addition to the foregoing, the trial judge at the inception of the trial, pursuant to stipulation of the parties, personally viewed the properties. ▪ The conditions observed and properly bearing on the case are independent evidence which may be considered by the trier of facts in arriving at his decision (*Gates* v. *McKinnon,* 18 Cal.2d 179, 182, 183 [114 P.2d 576]).

Indulging in every intendment which tends to support the judgment, and accepting as we are required to do, every reasonable inference that may be drawn from the facts which tend to support the findings, we cannot say that as a matter of law the evidence was insufficient to support the finding that appellant's conduct conferred an implied license with regard to the fill here in question.

Finally, appellant contends that the court erred in sustaining an objection to the admission into evidence of Los Angeles City Ordinance No. 100347. The record reflects that the proffered ordinance was not adopted until some two years after the acts of respondents complained of in this action were committed. The ordinance sets up certain standards with respect to fills on hillside property, including compactions and slope of the fill. It is appellant's contention that the ordinance should not have been excluded from the evidence in that, (1) it sets up a standard for assisting in determining whether or not the filling was negligently done, and if so, assists in determining the measure of damages; and (2) if the acts were a trespass, it is pertinent in determining, likewise, the measure of damages. That, in either case, it represents an expense the appellant must bear in order to utilize her property, an expense that she would not have incurred but for the acts of respondents. As to appellant's first contention, we are satisfied that the ruling of the trial judge was correct insofar as the ordinance might have a bearing on negligence or damages when he said:

"Now, it is true with respect to torts that the liability is for the damages proximately caused, whether foreseeable or not, but it must be damages which are proximately caused by the wrongdoer. Now, when a third party, like the city, two years later, intervenes and by virtue of its sharing in the sovereign power creates a new condition, I don't believe there is any proximate cause here. . . ."

In other words, the ordinance, passed two years after completion of the acts complained of, could not make negligent that which was not negligent at the time it was done (*James* v. *Oakland Traction Co.*, 10 Cal.App. 785, 793 [103 P. 1082]; *Morris* v. *Pacific Elec. Ry. Co.*, 2 Cal.2d 764, 768, 769 [43 P.2d 276]).

When the ordinance was offered in evidence, appellant's counsel stated it was "for the purpose of adding additional evidence to that presented by Mrs. Zellers (appellant)," and that, "it would be cumulative evidence on the damage factor."

■ Rejection of cumulative evidence is not prejudicial (*Ash* v. *Soo Sing Lung,* 177 Cal. 356, 360 [170 P. 843]; *Nulty* v. *Price,* 202 Cal. 279, 283 [260 P. 291]). ■ And where, as here, liability for damages was determined adversely to appellant who sought damages, the rejection of evidence on the question of damages is not prejudicial (*Bashford* v. *A. Levy & J. Zentner Co.,* 123 Cal.App. 204, 214 [11 P.2d 51]).

The record further reveals that when appellant offered the ordinance in evidence the court sustained the objection with the statement, ''Well, I think I will have to sustain the objection. You may renew it later if you can give me any further light on it.'' Thereupon, the ordinance was marked for identification. ■ When there is a rejection of evidence temporarily, or a decision as to its admissibility is withheld, the party offering the evidence should call the court's attention to the fact, that in the light of subsequent evidence or for other reasons, a definite and final decision is desired (*Spanfelner* v. *Meyer,* 51 Cal.App.2d 390, 392 [124 P.2d 862]). In the instant case no offer of the whole ordinance in evidence was thereafter made.

■ Later in the trial, however, on cross-examination of the witness Shields, appellant's counsel read into the record portions of the ordinance, to wit, sections 91.2815 *et seq.,* including section 91.2817. When counsel for respondents Oberg interposed an objection and moved to strike the answers on the ground no showing had been made that the sections read were in existence at the time the acts charged against respondents were committed, the court refused to strike the answers for the reason that the objection was too late, commenting, ''you waived your objection.'' As a result of this ruling there is to be found in the record portions of the aforesaid ordinance. Even though we assume the ruling of which appellant complains was erroneous, the subsequent admission of the evidence contained in the ordinance, would render the previous adverse and challenged ruling harmless. (*Battle* v. *Niece,* 43 Cal.App.2d 655, 659 [111 P.2d 455]; *Ward* v. *Sherman,* 155 Cal. 287, 294 [100 P. 864].)

The judgment and the portions thereof from which this appeal was taken are and each is affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied July 26, 1955, and appellant's petition for a hearing by the Supreme Court was denied September 1, 1955.