[Civ. No. 24056.   Second Dist., Div. One.   Dec. 3, 1959.]

GERRY MORRISON et al., Appellants, v. HOME SAVINGS AND LOAN ASSOCIATION OF LOS ANGELES (a Corporation), Respondent.

Manasse & Weissburg and Carl Weissburg for Appellants.

McKenna & Fitting, Bernard Kolbor and Paul Fitting for Respondent.

LILLIE, J.—Plaintiffs, owners of certain residential property, filed a suit for damages against respondent Home Savings and Loan Association of Los Angeles and referred to herein as defendant Association, Peter S. Tarsh Realty Company, and the Morvilles, purchasers of plaintiffs' property. Their second amended complaint contains three causes of action— the first to which a demurrer was interposed, charges a breach by defendant Association of its contract to make a loan on plaintiffs' property to defendant purchasers: but the second and third, seeking to impose liability on the other defendants, does not involve respondent and are not before this court. Its demurrer was sustained, and upon plaintiffs' statement

that they chose not to amend but to stand on the complaint the trial court entered its order dismissing the action against defendant Association, from which this appeal is taken. We are concerned only with the sufficiency of the first cause of action.

The pleading reflects the following facts: In November, 1957, plaintiffs authorized Peter S. Tarsh Realty Company to act as their agents in the sale of their residence. Defendant Association, engaged in the business of, and holding itself out as experienced in, providing real estate loans for the sale of houses, and familiar with property and loans thereon in that area, at the request of plaintiffs' agent Realty Company made an appraisal of their property upon which it orally promised to loan $24,500 to a prospective purchaser. In reliance thereon plaintiffs authorized Realty Company to sell the property and inform prospective purchasers of the loan commitment. Realty Company thereafter secured the Morvilles as purchasers advising them accordingly, and informed defendant Association of the impending sale requesting it to release the $24,500 to them. Defendant Association notified Realty Company it would advance only $23,000 instead of the original $24,500 but agreed to make the loan in that amount to the Morvilles for 17 years at a maximum of 6.6 per cent interest and on other terms not material here, which new commitment was satisfactory with plaintiffs who then authorized Realty Company to so advise the Morvilles. In reliance on this new loan commitment plaintiffs and defendant purchasers on January 20 and 22, 1958, entered into a written agreement for the sale of the property (Deposit Receipt Ex. B), and a written escrow agreement (Ex. A) fixing the purchase price at $34,500. On March 3, defendant Association mailed to the bank where the escrow was pending a written memorandum of the above loan commitment and its conditions, whereupon the bank compiled the information and documents necessary for the loan; and on March 25 and April 1 it mailed to defendant Association the information and the properly executed documents complying with the terms of the proposed loan and requested it to advise if it was in a position to release the funds. Defendant Association again confirmed in writing the loan promise and notified the bank it was in a position to release the money. Relying upon its conduct and these various oral and written loan commitments, plaintiffs then entered into and consummated an agreewith with a third person to purchase a new residence.

Approximately one week later, April 7, defendant Association for the first time notified the bank, defendant purchasers and Realty Company that it would not advance the $23,000 without an "all physical loss" insurance policy covering plaintiffs' property, thereby adding a new term and condition to, and changing the terms of, its previous promise. The original loan commitment, although calling for fire insurance with "broad form endorsements" did not at any time provide for an "all physical loss" insurance policy, and the imposition of the additional condition was effected after plaintiffs' reliance on the original conditions. Plaintiffs, Realty Company and defendant purchasers being unable to secure an "all physical loss" insurance policy, defendant Association refused to advance the $23,000. As the direct result of the conduct of defendant Association the sale of plaintiffs' residence to defendant purchasers was not consummated and plaintiffs sustained certain specified damages. Plaintiffs acted in good faith and in reliance on the promise of defendant Association, without which they would not have entered into the agreement with defendant purchasers to sell their home and would not have purchased another. All of the conditions of the loan commitment had been performed prior to April 7, and defendant purchasers would have consummated the agreement to buy plaintiffs' residence had defendant Association fulfilled its promise to loan the $23,000 on the original terms.

Upon appellants' advice to the lower court that they would not amend their complaint but wished to stand on their pleading, the trial judge properly withheld leave to amend (*Mulligan* v. *Wilson,* 103 Cal.App.2d 664 [229 P.2d 858]; *T. E. Connolly, Inc.* v. *State,* 72 Cal.App.2d 145 [164 P.2d 60]), making the sufficiency of the complaint the only issue before this court. (*Chapman* v. *Gillett,* 120 Cal.App. 122 [8 P.2d 184].)

Appellants have sought recovery against respondent Home Savings and Loan Association of Los Angeles on the theory of promissory estoppel, which respondent rightly concedes is recognized by the law of this state; and we find the allegations contained in appellants' first cause of action to be entirely consistent with the application of the doctrine. ▮▮ A recent reiteration of the basic rule of promissory estoppel is found in *Drennan* v. *Star Paving Co.,* 51 Cal.2d 409, at page 413 [333 P.2d 757] : "Section 90 of the Restatement of Contracts states: 'A promise which the promisor should reasonably expect to induce action or forebearance of a definite

and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' This rule applies in this state. (*Edmonds* v. *County of Los Angeles,* 40 Cal.2d 642 [255 P.2d 772] ; *Frebank Co.* v. *White,* 152 Cal.App.2d 522 [313 P.2d 633] ; *Wade* v. *Markwell & Co.,* 118 Cal.App.2d 410 [258 P.2d 497, 37 A.L.R.2d 1363] ; *West* v. *Hunt Foods, Inc.,* 101 Cal.App.2d 597 [225 P.2d 978] ; *Hunter* v. *Sparling,* 87 Cal.App.2d 711 [197 P.2d 807] ; see 18 Cal.Jur.2d 407-408 ; 5 Stan.L.Rev. 783.)''

Without question the pleading discloses that defendant Association made a clear and well defined promise to plaintiffs, through their agents, to loan on their property first $24,500, then $23,000, on certain prescribed terms to the prospective purchaser thereof, and in particular to the Morvilles. Beginning with the allegations concerning defendant Association's participation in facilitating the sale of plaintiffs' property by way of appraisal and its first oral loan commitment of $24,500 ; proceeding to the recitation of its conduct after being informed a purchaser had been secured and a sale was pending, consisting of oral reaffirmance of its loan commitment on certain specified terms, written confirmation thereof after the plaintiffs executed certain agreements and entered escrow, and a second written confirmation advising the bank it was ready to release the $23,000 after receiving the necessary information and documents; and concluding with the averments relative to the new loan condition added by defendant Association which the parties could not meet, it is clear from the complaint that defendant Association not only made a definite loan promise orally and in writing, but acted upon it partially performing the same.

That defendant Association had reason to expect and foresee that if it made such a loan commitment on their property plaintiffs would use it to induce a sale thereof, and upon finding a prospective buyer who could meet its terms execute an agreement of purchase and enter escrow, whereupon they would attempt to purchase another residence, is borne out by the allegations concerning the conduct of all the parties and their negotiations for both the loan commitment and the sale of the premises. Defendant Association was in the real estate loan business and by its advertising soliciting the same, held itself out as experienced in the field. It was familiar with land and loans thereon in that area. Because of its ex-

perience plaintiffs requested defendant Association to appraise their property for the purpose of securing a loan commitment to facilitate a sale, and it did so knowing this, orally committing itself to loan $24,500 on the property. Later, after it was advised that a sale was pending and asked to release the funds, it again reiterated its promise and submitted terms. This alone constituted reason enough for defendant Association to expect that it would induce action of a definite and substantial nature on the part of plaintiffs; and to foresee that they would make every effort to find a buyer, tell him what he could expect of defendant Association by way of financing, with this in mind fix the final purchase price, execute the necessary papers if he could qualify and enter into escrow for the sale of their home. But in addition, knowing that plaintiffs did just this in reliance on its loan commitment, defendant Association acted further on its loan promise by mailing to the bank a memorandum of the amount and its terms, inviting the submission of information and executed documents necessary to fulfill the conditions; and then after receiving the same from the plaintiffs and prospective purchasers through the bank, again in writing confirmed the loan and advised it was in a position to release the funds. Certainly at this point it must have been reasonably expected by defendant Association that plaintiffs would believe the money would be forthcoming from it to the purchasers on the agreed terms, the sale would be consummated and they would be free to buy another home.

The loan promise did not arise out of long complicated negotiations or from a series of uncertain agreements, nor is it a part of another commitment; but consists of a positive agreement complete in itself made by defendant Association as a business deal in the regular course of its operations for the specific purpose of aiding plaintiffs in the sale of their property and making a profit for itself. No other contemplated source of financing arranged for or relied upon by the parties was mentioned in the pleading and, assuming it was the only one available (for one reason or another) to defendant purchasers, it obviously served as the main inducement for plaintiffs' subsequent purchase of other premises. In light of the circumstances, it would be indeed difficult to argue that the plaintiffs' action induced by the loan commitments was not the foreseeable, direct and proximate result of the conduct of the defendant Association, and that it was not "of a definite and substantial character."

As to the element of reliance, plaintiffs' pleading in this regard is clear; and any suggestion that the loan commitment was for the benefit of the purchaser and did not entitle plaintiffs to rely thereon, not only plainly ignores the allegations that the commitment was made to the plaintiffs themselves through their agents, but is unrealistic, for a seller, anxious to dispose of his residence and buy another, has as much interest in the purchaser securing adequate financing as does the purchaser who wants to acquire the property. Financial arrangements are an integral part of negotiations for the sale of real estate and generally necessary for its ultimate consummation; and a loan commitment providing for specific arrangements (particularly where as here no other appears to have existed or even been contemplated by the parties) would not only be of vital interest to buyer and seller but would entitle both to rely upon it. On this point *Burgess* v. *California Mut. Building & Loan Assn.*, 210 Cal. 180 [290 P. 1029], wherein the court granted relief under the doctrine of promissory estoppel, is persuasive. In that case, with knowledge the letter was to further a transaction with appellant involving the title to the property in question, respondent Loan Association executed and delivered to appellant's grantor, McKillop, a letter agreeing to release the property from a first deed of trust for $6,000, and relying on respondent's letter, appellant loaned to McKillop $12,000, accepting a second deed of trust on the property as security. When McKillop defaulted appellant tendered the $6,000 to respondent Loan Association which refused reconveyance. Holding that appellant's rights accrued immediately when, in reliance on the document executed by respondent Loan Association, he made the loan to McKillop, the court applied the doctrine of promissory estoppel against respondent. The case at bar is supported by an even stronger factual situation, for not only did defendant Association here make its commitment to plaintiffs through their agents by a series of communications, oral and written, relative to the proposed loan, but plaintiffs in fact initiated the same by asking it to aid them in the sale of the property by appraising it and offering a loan thereon.

Respondent's position that the pleading is insufficient because it reflects no binding obligation of purchase, no actual reliance of plaintiffs on the loan commitment, and no damage caused by it, is predicated on the application of the rule set forth in *Alphonzo E. Bell Corp.* v. *Bell View Oil Syndicate,*

46 Cal.App.2d 684 [116 P.2d 786]; *Albaugh* v. *Moss Construction Co.*, 125 Cal.App.2d 126 [269 P.2d 936]; and *Bashford* v. *A. Levy & J. Zentner Co.*, 123 Cal.App. 204 [11 P.2d 51], under which it argues that the terms of the written instruments (deposit receipt and escrow agreement) attached as exhibits to the complaint, are contrary to, and therefore prevail over the conclusions of the pleader relative to the above matters rendering them ineffective as surplusage, and that which remains is not sufficient to constitute a cause of action.

In this connection our attention is called to certain recitals in the escrow agreement (Ex. A.): "The consummation of this escrow is contingent on Buyers securing a $23,000 loan for 17 years at a maximum of 6.6% interest. The execution of any loan papers in connection with this escrow is to be deemed Buyers waiver of said contingency, provided the loan to which such papers relate is consummated . . .

"It is understood and agreed that this agreement contains the entire agreement between Buyer and Seller."; and that in the deposit receipt (Ex. B): "Buyer . . . to arrange for a first deed and note of trust (sic) of $23,000 at 6.6% for 18 years." Respondent submits that since the contingency in the escrow agreement was never met (a loan was never secured by the Morvilles) and the purchasers were thus not obligated to buy it cannot be held for a failure to finance a nonexistent sale; that the escrow agreement and the deposit receipt, having been executed after the loan commitment, having recited that the burden of securing the financing was on the buyer and neither having mentioned it as the source of the financing, plaintiffs could not, and did not rely on it to provide defendant purchasers with the necessary funds; and that the sale was not consummated not because it refused to provide the loan as originally promised but because defendant purchasers did not seek financing from other sources. In advancing this position, respondent would have us, under the authority of the Bell case, *supra*, and others cited by it, completely ignore the express and clear allegations in the complaint establishing a binding contract of sale, plaintiffs' reliance on its conduct, and damage as a result thereof. This we cannot do, for a careful analysis of the recitals in the written documents referred to discloses that they do not in any way negate the allegations of the complaint. The documents reflect agreements between plaintiffs and defendant purchasers to which defendant Association was never a party; and although it is true that plaintiffs' cause of action against defendant Asso-

ciation arises out of the failure of the contract of sale between them and defendant purchasers, it is in fact based upon the breach by defendant Association of an agreement not evidenced by a writing attached to the complaint. In the cases cited by respondent including *Alphonzo E. Bell Corp.* v. *Bell View Oil Syndicate, supra,* 46 Cal.App.2d 684, the litigation in each appears to have been between the parties to the agreements set forth in the pleadings. However, for even a stronger reason, the situation at bar does not fall within the rule of these cases—there is nothing in the recitals in either document attached to the complaint contrary to the allegations contained in the pleading. At most, as between plaintiffs and defendant purchasers, they provide that the latter shall secure a loan in an amount and on terms identical to those promised to plaintiffs by defendant Association; and their silence as to the source of the loan does not create any inconsistency which would negate the express averments of a commitment existing between plaintiffs and defendant Association.

The allegations consisting of good pleading constitute a cause of action against defendant Association predicated upon the doctrine of promissory estoppel, although it may well be that in a trial on the merits respondent may be able to establish that no binding contract of sale existed, or that plaintiffs did not in fact rely upon its promise to loan the money or that the responsibility of securing financing was upon defendant purchasers independent of defendant Association and that any damage to plaintiffs could have been caused only by their failure.

As to whether an ''injustice can be avoided only by enforcement of the promise'' (*Drennan* v. *Star Paving Co., supra,* 51 Cal.2d 409, 413), it is obvious from the pleading that the action taken by plaintiffs in reliance on the conduct and loan commitment of defendant Association was of such a nature as to create a substantial and complete change of their position for which, in light of the circumstances, relief should be granted. After they had agreed to sell their home to defendant purchasers plaintiffs consummated a sale of other premises financially obligating themselves thereby. They are now encumbered with two residences and the obligations that accompany them. The nature and extent of the hardship appears to be as substantial and serious as those discussed in *Drennan* v. *Star Paving Co., supra,* 51 Cal.2d 409; *Frebank Co.* v. *White, supra,* 152 Cal.App.2d 522; *West* v. *Hunts*

*Foods, Inc., supra,* 101 Cal.App.2d 597 and *Hunter* v. *Sparling,* 87 Cal.App.2d 711, *supra,* wherein relief was granted.

For the foregoing reasons the judgment is reversed.

Wood, P. J., and Fourt, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 27, 1960.