[Civ. No. 4730. First Appellate District, Division Two.—March 15, 1924.]

## JOHN S. DINSMORE et al., Appellants, v. ARTHUR RENFROE et al., Respondents.

[1] NEW TRIAL—NOTICE OF INTENTION — TIME — APPEAL — PRESUMPTION.—The time for serving notice of intention to move for a new trial is made dependent upon the service of notice of the entry of judgment; and where there is nothing in the record on appeal to indicate when the notice of entry of judgment was served, the presumption is of a date that will support the subsequent proceedings and orders of the trial court.

---

1. See 20 R. C. L. 304.

[2] ID.—TIME OF FILING—PRESUMPTION—APPEAL.—Where the record on appeal does not indicate when the notice of entry of judgment was served, it will be presumed that the notice of intention to move for a new trial was filed within ten days after notice of entry of judgment; and where such motion is decided within the statutory period and the notice of appeal is filed within thirty days thereafter, the appeal is filed in time.

[3] COTENANCY — LICENSE FROM ONE COTENANT TO BUILD ROAD — TRESPASS.—Where one cotenant grants to a stranger a license to enter upon and construct a road across the property held in cotenancy, said stranger, in accepting and acting upon said license, is not answerable as a trespasser to the other cotenants.

[4] ID.—LICENSE FROM ONE COTENANT—EXPENDITURE OF MONEYS.—Where one cotenant grants to a stranger a license to enter upon and construct a road across the property owned by the former and his cotenants, and said stranger, in reliance upon such license, enters upon the property and spends considerable money in the construction of the road, the license becomes irrevocable.

---

. (1) 4 C. J., p. 784, sec. 2734; 29 Cyc., p. 939.   (2) 3 C. J., pp. 1051, 1054, sec. 1050 (1926 Anno.); 4 C. J., p. 784, sec. 2734.   (3) 38 Cyc., p. 101.   (4) 38 Cyc., p. 107 (1926 Anno.).

APPEAL from a judgment of the Superior Court of Humboldt County. Denver Sevier, Judge. Affirmed.

The facts are stated in the opinion of the court.

Puter & Quinn for Appellants.

Pierce H. Ryan for Respondents.

LANGDON, P. J.—This is an appeal by the plaintiffs from a judgment against them in an action in which they sought an injunction against the defendants to prevent them from passing over a road which said defendants had constructed at their own cost and expense over the land of plaintiffs. Plaintiffs also asked for two hundred dollars, alleged damages for trespass upon the land of plaintiffs in the building of said road.

---

4. Revocability of executed license on faith of which licensee has incurred expense, notes, 2 Ann. Cas. 787; 7 Ann. Cas. 706; 13 Ann. Cas. 843; Ann. Cas. 1913A, 74; Ann. Cas. 1914C, 920.  See, also, 16 Cal. Jur. 286; 17 R. C. L. 578.

[1]　At the outset it is necessary to consider, briefly, respondent's contention that the appeal was filed too late and should be dismissed. The record discloses that a jury answered several special interrogatories at the request of the court, but did not render a verdict. The court then made its findings and judgment, which judgment, in favor of the defendants, was entered on October 31, 1922. There is nothing to indicate when the notice of entry of judgment was served upon the plaintiffs, and in the absence of such a showing the presumption is of a date which will support the subsequent proceedings and orders of the trial court. The time for serving notice of intention to move for a new trial is made dependent upon the service of notice of the entry of judgment. (Code Civ. Proc., sec. 659; *Bates* v. *Ransome-Crummey Co.*, 42 Cal. App. 702 [184 Pac. 39].) [2] The notice of intention to move for a new trial was filed on November 17, 1922, and it will be presumed that this was within ten days after notice of entry of judgment. The motion for a new trial was determined adversely to plaintiffs on February 9, 1923. At that time, prior to August, 1923, the trial court had three months within which to determine this motion, so its order was made in good time. The time for the filing of the appeal was extended thirty days after the date of the order upon the motion for a new trial. The notice of appeal was filed on March 2, 1923, which was within that time. We think, therefore, that there is no merit in the position that the appeal should be dismissed.

The appeal comes to us upon the judgment-roll alone. Special interrogatories were submitted by the court to the jury, in answer to which the jury found that the plaintiff William (W. J. C.) Dinsmore had granted to defendants permission to build the road in controversy; that the plaintiff William Dinsmore had knowledge of the construction of the road as it was being built, and that plaintiffs' property had not been damaged by the construction of the road. The court made the further findings that on March 10, 1921, plaintiffs were the owners of the land described in the complaint, and that on said date defendants had a certain easement in said lands, to wit, a right of way over, along, and across a certain road or trail extending in a general northerly and southerly direction across said land, and that plaintiffs' ownership was subject to defendants' said ease-

ment. That on said date and prior thereto plaintiffs were in possession of said lands, but their possession was subject to said easements. It was also found that in the spring or summer of 1921 the defendants entered upon the land of plaintiffs and constructed a road running north and south, terminating at the county road on the south of said land, but that said entry was not without the consent or permission of plaintiffs nor against their will in violation of any request that they keep off of said land, as alleged in the complaint, but, on the contrary, that said entry and the construction of said road by defendants was pursuant to the express authority, permission, and license so to do granted to defendants by plaintiffs; that before the commencement of the construction of said road said plaintiffs W. J. C. Dinsmore and John S. Dinsmore expressly gave and granted to defendants authority and permission to construct and use said road and told defendants to build such road at such place as they, the said defendants, desired, which permission and authority have never been revoked; that pursuant to said authority and permission defendants did construct and build said road; that the construction thereof cost defendants many hundreds of dollars in material and labor and that the construction thereof was with the actual knowledge of plaintiffs W. J. C. Dinsmore, John S. Dinsmore, and Trustum R. Dinsmore, and that plaintiffs W. J. C. Dinsmore and John S. Dinsmore passed over said road while it was being constructed and saw defendants working thereon, and that plaintiffs W. J. C. Dinsmore, John S. Dinsmore, and Trustum R. Dinsmore heard defendants blasting at said construction work, and that said plaintiff W. J. C. Dinsmore offered to loan to defendants a scraper to be used in said construction work, and that a portion of said road does pass, and while construction work was in progress did pass, within sight of plaintiffs' residence, and that ever since its completion it has been used with the knowledge of all of plaintiffs, by defendants and by the general public, and that none of the plaintiffs ever protested or objected to its construction or its use by the defendants or by the public until the commencement of this action.

The trial court concluded from these findings that the defendants had been granted a license to build said road and to pass over the same, and that such license had become

irrevocable by reason of the expenditure of considerable money by the defendants in reliance thereon; that plaintiffs had not been damaged by the construction of said road and were not entitled to recover a money judgment nor to be awarded an injunction against the defendants.

Appellants complain that the findings are inconsistent in that the jury found that William (W. J. C.) Dinsmore had granted permission to the defendants to build a road and had actual knowledge of its construction, while the court found that not only William Dinsmore but also John S. Dinsmore granted permission to build the road, and that these two plaintiffs, as well as Trustum R. Dinsmore, had actual knowledge of the construction of the road.

Respondents reply by pointing out that the entire case was not submitted to the jury, but merely special interrogatories; that the court adopted the jury's answers to these interrogatories, in so far as they went, and then added court findings; that the court was not bound to accept the special findings of the jury, and in doing so must not be considered as having adopted any possible implied findings of the jury at variance with express findings of the court. If this view, which we think is a proper one, be adopted, we have a situation where the court adopted a finding that one of the plaintiffs, William Dinsmore, gave defendants permission to construct the road and had actual knowledge of its construction, and added other and further findings not in conflict therewith and to the effect that another plaintiff also granted this permission, and that two plaintiffs, other than William Dinsmore, had actual knowledge of the construction of the road by defendants. However, if we should construe the adopted findings of the jury as appellants insist we should do, as including implied findings that all plaintiffs except William Dinsmore did not grant permission to build the road and did not have actual knowledge of its construction, we think the judgment should not be reversed because of the conflict between these implied findings and the further findings added by the court. Under this view of the matter, the findings of the court go further than those of the jury, but upon the adopted findings of the jury alone, which are the ones most favorable to the appellants, we think the judgment was proper.

The action was one to enjoin a trespass and recover damages therefor, and the question presented is whether one entering upon the common lands of a cotenancy, with the permission of one of the cotenants, is a trespasser.

The authorities cited by appellants holding that one cotenant cannot grant an easement that will be binding upon the interests of his co-owners have no bearing in this case, for the reason that the defendants do not claim an easement, but merely a license, which has now become irrevocable, as shall be discussed hereinafter. There is a clear distinction between the two. (*Pinheiro* v. *Bettencourt,* 17 Cal. App. 111, 119 [118 Pac. 941]; 17 R. C. L., sec. 80, p. 566 et seq.) As to the power of one cotenant to grant a license which will absolve the licensee, in the exercise thereof, of the charge of trespass made by the other cotenants, it was said in the case of *Ord* v. *Chester,* 18 Cal. 77, 80: "Those findings present the simple question whether a party put in possession or allowed to occupy a portion of premises by one tenant in common can be sued as a trespasser by another tenant in common without notice to quit or some other act showing a termination of this license or tenancy. We have no doubt that one tenant in common may occupy the common premises, *and as little that he may permit another person to occupy a part of them;* and it is impossible for us to see how that tenant in common could sue such person, so lawfully entering and occupying, as a trespasser, *or how his cotenant could maintain such suit.* Having entered, or being in possession by lawful right, he cannot, so long as his relation to the owners is unchanged, be turned into a trespasser, and be held liable in costs and damages for doing what he was lawfully authorized by those owners or one of them to do."

In the case of *Lee Chuck* v. *Quan Wo Chong & Co.,* 91 Cal. 593 [28 Pac. 45], it was said: "The uncontradicted evidence shows that the defendant was in possession of the property with the consent of said Chay Yune (one of the co-owners). All that the plaintiff was entitled to, therefore, was to be let into possession with the defendant—to enjoy his moiety. (Freeman on Cotenancy and Partition, secs. 180, 220; *Pickard* v. *Perley,* 45 N. H. 191 [76 Am. Dec. 153]; *Ord* v. *Chester,* 18 Cal. 80.)"

"One tenant in common may, 'by either lease or license, . . . confer upon another person the right to occupy and

use the property of the cotenancy as fully as such lessor or licensor himself might have used or occupied it if such lease or license had not been granted. If either cotenant expel such licensee or lessee, he is guilty of a trespass. If the lessee has the exclusive possession of the premises, he is not liable to any one but his lessor for the rent, unless the other cotenants attempt to enter and he resists or forbids their entry, or unless, being in possession with them, he ousts or excludes some or all of them.' (Freeman on Cotenancy and Partition, sec. 253.) There is no evidence tending to show that the defendant ever refused to allow the plaintiff to enjoy the use of the premises with him.''

The foregoing decisions are in harmony with those of other states. In the case of *Buchanan* v. *Jencks,* 38 R. I. 443 [2 A. L. R. 987, 96 Atl. 307], the plaintiffs were co-owners with one Thayer in a parcel of land. Thayer sold the standing timber and wood upon said land to one Aldrich and authorized him to cut and remove the same. Aldrich conveyed his rights to the defendant Jencks, who proceeded to cut the timber and remove the same, which resulted in an action for damages by the owners of the land, other than Thayer. The court said: ''It seems to us desirable to determine, in the first instance, whether or not Barton W. Jencks, through the several transfers before mentioned, acquired a right to enter upon this lot and cut wood and timber. It will not be disputed that one cotenant, by an entry upon the common property, does not *ipso facto* become a trespasser. He may become a trespasser, as some of the authorities hold, if his entry is accompanied by acts which amount to an ouster of his cotenants, or is followed by destruction of the common property. Enoch Thayer as a tenant in common of this wood lot, had the right to enter upon the same without becoming a trespasser, and he had the right to cut timber and wood there, provided his entry did not amount, as before suggested, to an ouster of his co-tenants, or involve the destruction of common property. . . . We see no reason why a cotenant, in the enjoyment of his rights as such, cannot authorize another to do what he might lawfully do himself. A contrary view, if followed to its logical conclusion, would restrict a cotenant's enjoyment of the common property to the sphere of his own personal activities, and would deprive him of the aid of others

whom he might desire or need to employ. A cotenant has the right to divest himself of his entire interest in the common estate, and thus bring into association with his former cotenants one who has theretofore been a stranger to the title, and this he can do independently and without the consent of the other interests. This being so, it would seem unreasonable to say that a cotenant could not authorize another to go upon the common land, and do anything that he might do himself. We think therefore that in this case we must apply the same principles to the consideration of the acts of the defendant Jencks which we might have applied to Thayer, the cotenant, had he, in person, committed the acts of which the plaintiffs now complain.''

In the last cited case the court says, further: ''We do not find anything in the evidence showing an ouster of the plaintiffs. So far as appears, they were in no way prevented by the defendant or by Thayer from entering upon the premises and cutting and removing timber and wood, had they seen fit to do so, and we do not think that the sale, cutting and removal of matured timber and wood amounts to a destruction of the property which the law contemplates. . . .

''The gist of the count is that the defendant broke and entered the close of plaintiffs. But a cotenant cannot be said to be guilty of a trespass *quare clausum fregit,* for the reason that he has, in common with his cotenants, a right to enter upon the premises, and such entry does not constitute a trespass. *Neither could the defendant be guilty of a trespass in entering the close, because he entered upon the authority of Thayer, who was a cotenant with the plaintiffs.''

[3] We think it is beyond dispute from the foregoing authorities that the defendants are not answerable as trespassers to the cotenants of William Dinsmore, because of their acts under the license granted them by said William Dinsmore.

Upon the question of the revocability of the license, it is to be recalled that the trial court found that the construction of the road in controversy cost the defendants many hundreds of dollars in material and labor and that plaintiffs W. J. C. Dinsmore and John S. Dinsmore passed over said road while it was being constructed and saw defendants

working thereon and that plaintiffs W. J. C. Dinsmore, John S. Dinsmore, and Trustum R. Dinsmore heard defendants blasting at said construction work, and that said plaintiff W. J. C. Dinsmore offered to loan to defendants a scraper to be used in said construction work, and that a portion of said road passes within sight of the plaintiffs' residence. These latter findings are to be reconciled, if possible, with the implied finding of the jury that John S. and Trustum R. Dinsmore did not have actual knowledge of the construction of the road. They may be construed so as to be harmonious for the court found facts from which it is fair to say that John S. and Trustum R. Dinsmore should have made inquiry as to the construction of the road by defendants, which is not inconsistent with the implied finding of the jury that these plaintiffs had no actual knowledge of such construction. However, the question of whether or not all the plaintiffs had actual or only constructive knowledge of the building of the road becomes immaterial, as the judgment need not be based upon the doctrine of estoppel.

[4] The defendants built the road under a license from William Dinsmore, one of the co-owners of the land, which license had never been revoked until defendants had spent hundreds of dollars in reliance thereon. It has now become irrevocable because of this expenditure by the defendants. (17 R. C. L., sec. 90, p. 578 et seq.; *Flickinger* v. *Shaw,* 87 Cal. 126 [22 Am. St. Rep. 234, 11 L. R. A. 134, 25 Pac. 268]; *Grimshaw* v. *Belcher,* 88 Cal. 217 [22 Am. St. Rep. 298, 26 Pac. 84]; *Stoner* v. *Zucker,* 148 Cal. 516 [113 Am. St. Rep. 301, 7 Ann. Cas. 704, 83 Pac. 808]; *Miller & Lux* v. *Kern Land Co.,* 154 Cal. 785 [99 Pac. 179].)

The motion to dismiss the appeal is denied.

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 12, 1924.

All the Justices concurred.