[Civ. No. 17710.   Second Dist., Div. Three.   Jan. 15, 1951.]

MAYBELLE D. KALER et al., Appellants, v. HAROLD
BROWN et al., Respondents.

Halverson & Halverson for Appellants.

Warner, Peracca & Cowan for Respondents.

SHINN, P. J.—This action was brought by Alfred H.
Kaler, Jr., and wife against Harold Brown and wife for
an injunction to restrain defendants from interfering with
the use by plaintiffs of a driveway located on the property
of defendants over which plaintiffs claim to have a right-
of-way for ingress and egress to and from a garage located
on their lot.   Plaintiffs also sought damages.   Judgment
was for defendants and plaintiffs appeal.

In 1913 Alfred M. Kaler, Sr., owned Lot 62 in the Segno Tract in Los Angeles and constructed a dwelling thereon. Lot 63 adjoining was owned by a Mr. and Mrs. Stevens and in 1915 or 1916 they constructed a residence on their lot and occupied it as a home. The two residences faced toward the west, the Stevens' home being the northerly of the two. Along the southerly side of the Stevens' house a narrow cement walk extended from the front to the rear of the building, a distance of about 40 feet. There was room for a driveway on the Stevens' property but only 3 or 4 feet on the Kaler property between their house and the north line of their lot. At the southeast corner of the Stevens' property there was a small garage and the Kalers built a small garage on the northeast corner of their lot. In 1917 Kaler, Sr., had a conversation with Mrs. Stevens which he related on the stand as follows: "I asked Mrs. Stevens if she would object to my placing the two strips in there on her property such as was required. She said, 'Go ahead and put it in' and that's all there was to it." Kaler, Sr., then constructed a driveway consisting of two cement strips about 1½ feet wide using therein the cement walk which extended along the south side of the Stevens' house. The work took parts of two Sundays. Some friends assisted in the work gratuitously and there was a small expenditure for materials, the amount of which was not given in evidence. Neither the Stevens nor the Kalers had an automobile at that time. Kaler, Sr., bought a car in 1919 and made use of the driveway up to a point in the rear of the buildings where he veered off from the Stevens' lot onto his own. No objection was made to his using the driveway in this manner. In 1934 Kaler moved to San Francisco, where he remained until 1944, returning to Los Angeles on from two to four occasions a year, during which brief visits he would sometimes put his car in the Kaler garage, and sometimes leave it on the street. In 1944 the Kaler property was conveyed to the plaintiff Kaler, Jr., and his wife, and they occupied the premises from that time on. In the meantime the Stevens' property had been sold to Mr. and Mrs. Gracey, who moved into the premises with their daughter, Jessie Howard, and her husband. They lived there from 1930 to 1938. In 1932 the property was conveyed to the Howards. Sometime thereafter, and after Kaler, Sr., had moved to San Francisco, Mrs. Howard and Mrs. Kaler had a disagreement. Mrs. Kaler had allowed some young men who lived across the

street to put their car in her garage; Mrs. Howard objected and they had words. Kaler, Sr., returning to the scene, placed his car in his garage and, according to the testimony of Mrs. Howard, came to the Howard home, conversed with the Howards, said he was sorry that the women had had trouble over the driveway, that he had just come down from the north with some things and hoped it would be all right for him to drive into his garage. Mr. Howard said that he could use it; that he had permission to use it, and Mr. Kaler on his infrequent trips did make use of the driveway to reach his garage. In 1945 or 1946 he had a trailer stored in the garage. Defendants Brown had acquired the adjoining property in 1938. During their ownership little use was made of the driveway by the Kalers. After Kaler, Jr., got a car, in 1946, he put it in his garage on a few occasions, but usually parked it in the street in front of the house. In September, 1948, Mr. Brown left his car parked in the driveway during the evening; Kaler, Jr., went to the Brown house and registered an objection; shortly thereafter young Kaler left his car parked in the driveway, which precipitated a vigorous remonstrance on the part of Brown. The parties then decided to go to law.

In the Kalers' original complaint they claimed a right-of-way by prescription, and they also alleged that with the knowledge, acquiescence and consent of the then owner of Lot 63 the right-of-way was graded, laid out and cemented by plaintiffs and their predecessor at great expense, and had been used for more than 25 years. After a demurrer was sustained to the complaint an amended complaint was filed alleging a prescriptive right-of-way, and also alleging that plaintiffs and their predecessor had laid out, graded and cemented the driveway at great expense and that the same had been used for more than 25 years under a claim of right. Thus, in the original complaint, plaintiffs claimed an easement derived from open, notorious, and adverse use, and also claimed an irrevocable license founded upon their having incurred great expense in preparing the driveway for use with the consent of the owner of Lot 63. In their amended complaint they omitted the allegations under which they might claim an irrevocable license and claimed only an easement through adverse use. The court found that plaintiffs or their predecessors had not used the strip of land under a claim of right or adversely to defendants or their predecessors. It was found that the strip was laid out with

permission of defendants' predecessors in interest but that it was not laid out, graded or cemented at great expense; also that the use by plaintiffs and their predecessors of the strip had been with permission of the defendants and their predecessors in interest.

Appellants' first argument is "The evidence showed an executed oral license which was and is irrevocable." They rely upon the rule stated in *Stoner* v. *Zucker*, 148 Cal. 516, 520 [83 P. 808, 113 Am.St.Rep. 301, 7 Ann.Cas. 704]: "The recognized principle, therefore, is that where a licensee has entered under a parol license and has expended money, or its equivalent in labor, in the execution of the license, the license becomes irrevocable, the licensee will have a right of entry upon the lands of the licensor for the purpose of maintaining his structures, or, in general, his rights under his license, and the license will continue for so long a time as the nature of it calls for." Plaintiffs, in their amended complaint, did not allege facts which would establish the existence of an irrevocable license. Neither did they prove facts which would have estopped defendants from revoking the license which their predecessors had given. There was no evidence as to the value of the labor and material that went into the cement strips, and it is quite obvious that the expense was trivial. The small improvement was one which accommodated the Stevens family as well as the Kalers; it did not call for an expenditure which would have justified the former in giving the Kalers permission to use the driveway permanently. From the undisputed evidence the permission appeared to be merely a neighborly accommodation to both parties without any agreement or understanding that it was to continue for any definite time. A reasonable inference is that the parties understood it to be an arrangement terminable at the pleasure of Mr. and Mrs. Stevens. Mr. Kaler requested nothing more than this. His small expenditure was more commensurate with a temporary than a permanent right to use the driveway. Plaintiffs and their predecessors have been amply repaid for the original cost of the driveway. Revocation of permission to use it longer works no injustice to them. They were fortunate to have had 25 years' use of it before dissension arose.

Appellants' next proposition is that the open, notorious, and continuous use of the driveway for the statutory period raised a presumption that the use was under a claim of right and adverse to defendants and their predecessors; that

the burden was upon defendants to overcome the presumption by proof that the use was permissive, and that they failed to do so. It is a familiar rule. (See *Wallace* v. *Whitmore*, 47 Cal.App.2d 369 [117 P.2d 926].) The answer of defendants is that they did prove the origin of the use, that it was initiated under permission given by Mr. and Mrs. Stevens, and so continued without question until shortly before the institution of the present action, after the parties had fallen into disagreement. As stated in *Peck* v. *Howard*, 73 Cal.App. 2d 308, 328 [167 P.2d 753]: "Prescriptive rights are established only when the enjoyment thereof is adverse, continuous and under claim of legal right, and not by consent, permission or mere indulgence of the owner of the alleged servient estate."

There are no other points urged by appellants which require discussion. The case was fully and fairly tried and the findings and judgment have ample support in the record.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.