[Civ. No. 23799. First Dist., Div. One. Dec. 26, 1967.]

FRED W. HAMMOND, JR., et al., Plaintiffs and Appellants, v. L. T. MUSTARD et al., Defendants and Respondents.

L. T. MUSTARD et al., Plaintiffs and Respondents, v. FRED W. HAMMOND, JR. et al., Defendants and Appellants.

(Consolidated Actions.)

Timothy W. O'Brien for Appellants.

Rawles, Nelson, Golden & Poulos, Newell Rawles and Joan G. Poulos for Respondents.

ELKINGTON, J.—Plaintiffs Hammond appeal from a judgment entered, in cross-actions to quiet title, in favor of defendants Mustard. The Mustards were adjudged to be the holders of an executed irrevocable license to use a roadway across land belonging to the Hammonds.

We consider the facts, as we must, in a light most favorable to the Mustards who prevailed below. (*Waller* v. *Southern Pac. Co.*, 66 Cal.2d 201, 204 [57 Cal.Rptr. 353, 424 P.2d 937].)

The case concerns a right-of-way to a 200-acre parcel of land in Mendocino County which the Mustards rented in 1958 and purchased in 1959. It was used by them for camping and recreation. They customarily reached the property over a dirt road which commenced at the highway from Ukiah to Booneville. The road from that point traveled generally in a northwesterly direction through property belonging to one "Palmer estate," and across 40 acres of land belonging to plaintiff Fred Hammond, to the Mustard land. Known as the Hammond-Palmer road it had been used in varying conditions, and for different purposes, for over 50 years.

Another road, the Pytel road, connected the Mustard land with the Ukiah-Booneville highway. This road did not touch the Hammond property and on the Mustard land it connected with the Hammond-Palmer road. A granted easement for a right-of-way over the Pytel road was appurtenant to the Mustard land. This road was a logging road. It was not usable in wintertime. It had a winding steep grade into the bottom of a canyon. Throughout 1959 it was washed out and could not be traveled, even by a jeep. The Hammonds admit "A practical or physical necessity may have existed" to use the Hammond-Palmer road, at least before 1961. By stipulation of the parties the trial judge visited and observed both roads. The conditions observed were independent evidence supportive of the findings we shall hereafter discuss. (*Zellers* v. *State of California*, 134 Cal.App.2d 270, 275 [285 P.2d 962].)

During the summer of 1958 defendant Don Hammond, a son of defendant Fred Hammond, visited Mustard on the 200-acre parcel. Mustard told him that he held an option to buy the place, and of his plans to build some cabins. The men discussed the lack of any easement over the Palmer property and their fears that they might be shut off from the use of that property when the Palmer estate was settled. They talked about Mustard using the Hammond-Palmer road. Mustard said, "How about you give me a right-of-way through you and I will give you a right of way through this easement I

have?'' Don Hammond said he thought that was "pretty good stuff" and "It might be a good idea.'' He testified that they both discussed the possibility of using the Pytel road in the event they couldn't use the Palmer property, and that he told Mustard that it would be all right to use the Hammond-Palmer road knowing that Mustard was going to spend money on cabins to fix a place for himself and for each of his daughter's families. In a letter Don Hammond admitted he had agreed to allow the Mustards to use his road.[1] Fred Hammond testified that Mustard told him of his plans to build around the time he asked for permission to use the Hammond-Palmer road.

Mustard exercised his option and bought the property. He continued to use the Hammond-Palmer road, taking for "granted that that was part of the deal.'' He spent $382.50 for bulldozing and scraping the road, and his sons-in-law and grandsons did a lot of work on it. He built three cabins on the property at a cost of around $5,500. The building materials were brought in over the Hammond-Palmer road. Mustard and Don Hammond "visited along" and Don Hammond "knew what [Mustard] was doing all the time." All the while Mustard continued using the Hammond-Palmer road. He testified that in buying the property and making the improvements he relied upon a continued right to use that road.

In 1960 a somewhat petty misunderstanding arose between the Hammonds and the Mustards. Under threats of violence the Mustards were ordered not to use the Hammond-Palmer road. Mustard thereupon spent $1,358 trying to make the Pytel road usable; however, the road was still not passable in wet weather. When necessary the Mustards continued to use the Hammond-Palmer road. This resulted in chain barricades across the Hammond-Palmer road which were broken by the Mustards, further bitterness and finally this lawsuit.

Generally, the Hammonds urge that the findings and judgment of the trial court are not supported by the evidence. Accordingly, we apply the frequently stated rule that when such an attack is made, the power of an appellate court begins and ends with a determination as to whether there is any

---

[1]Don Hammond testified he led Mustard to believe he had an interest in the Hammond property. Fred Hammond, his father and the owner of the property at the time of the above happenings, testified that Don conferred with him as to whatever commitments he made, and that whatever Don might have told Mustard was done with the father's authority. Don Hammond also became an owner of the property before the trial.

substantial evidence, contradicted or uncontradicted, which will support the findings and judgment. (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.*, 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805].)

CONTENTION: Mustard did not *reasonably* make expenditures in reliance upon Hammond's permisison to use the road. Hence an irrevocable license was not established.

▆▆▆ The principles relating to the determination of an irrevocable license have been stated successively by *Stoner* v. *Zucker*, 148 Cal. 516, 520 [83 P. 808, 113 Am.St.Rep. 301, 7 Ann.Cas. 704], and *Cooke* v. *Ramponi*, 38 Cal.2d 282, 287 [239 P.2d 638], as ''where a licensee has entered under a parol license and has expended money, or its equivalent in labor, in the execution of the license, the license becomes irrevocable, the licensee will have a right of entry upon the lands of the licensor for the purpose of maintaining his structures, or, in general, his rights under his license, and the license will continue for so long a time as the nature of it calls for.'' The facts before us rather clearly indicate the applicability of this rule.[2]

Among other things the trial court found: ''3. That there is a road, approximately 30 feet in width, now in existence which extends through the lands of plaintiffs herein, running in a generally northwesterly and southwesterly [*sic*] direction, which road has been in existence and has been used by defendants' predecessors for over fifty years prior to the institution of this action, said roadway has been used as a means of ingress and egress to lands now owned by defendants. Before purchasing the real property . . . defendants asked and received of plaintiffs permission to use and improve said road as a means of ingress and egress to the aforementioned lands. Defendants, relying upon said permission, purchased the real property above described and further, in reliance upon the permission of plaintiffs to their continued use of said road, defendants, with the permission, knowledge and acquiescence of said plaintiffs expended money, labor and materials in the improvement and maintenance of the aforementioned roadway. Defendants further, with the knowledge, acquiescence and consent of plaintiffs, moved materials over

---

. [2]The Hammonds speak·· of the irrevocable license as creating a ''·perpetual'' right to cross their land. Although designated ''irrevocable'' it·must be noted that ·the ·judgment, ·following the language .of *Stonér*. v. *Zucker*, *supra*,· and *Cooke* v. *Ramponi*, *supra*, provides that the license shall continue ''for so long as the nature of [the] use requires the continuance of said license.''

said roadway and constructed cabins, houses and other improvements upon defendants' lands, all of which improvements were made by defendants in reliance upon plaintiffs' consent, knowledge and acquiescence. . . . 5. That plaintiffs should not now be permitted to revoke defendants' permission to use said roadway as a means of ingress and egress to their property, that to permit plaintiffs now to revoke said permission would work a great and irreparable injury to defendants. That defendants purchased said real property, improved said roadway and constructed the improvements on the aforementioned lands in reliance upon plaintiffs' consent to the use by defendants of said roadway as a means of ingress and egress to defendants' lands.''

The foregoing findings are supported by the evidence, and in turn they give proper support to the judgment.

 The Hammonds contend, however, that to support the judgment the evidence must show that Mustard's reliance on their consent to use the roadway was reasonable; and further that the trial court erred in not specifically finding on the issue of reasonableness. In support of this contention they cite Restatement of the Law, Property, section 519, subdivision (4), which, among other things, states: ''A licensee . . . who has made expenditures of capital or labor in the exercise of his license in *reasonable* reliance upon representations by the licensor as to the duration of the license, is privileged to continue the use permitted by the license to the extent reasonably necessary to realize upon his expenditures.'' (Italics added.)

We find ourselves in agreement with the contention that such a reliance must be reasonable. Such is the necessary implication of *Stoner* v. *Zucker, supra,* 148 Cal. 516, in which the question of reasonableness of the licensee's reliance was neither at issue, nor discussed. It will be noted that the court in *Cooke* v. *Ramponi, supra,* 38 Cal.2d 282, 286, cited with approval section 519, subdivision (4), Restatement of the Law, *supra,* relied upon by the Hammonds. Manifestly one who *unreasonably* relies upon statements or conduct of another may not assert an irrevocable license.

 But here the evidence supports a finding of reasonableness and such is implied in the express findings made by the court. Unless there is a request for special findings a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue, if a finding thereon, consistent with the judgment, results by necessary implication

from the express findings which are made. (Code Civ. Proc., § 634; *Auer* v. *Frank,* 227 Cal.App.2d 396, 406 [38 Cal.Rptr. 684, 8 A.L.R.3d 1108]; see also *Seely* v. *White Motor Co.,* 63 Cal.2d 9, 14-15 [45 Cal.Rptr. 17, 403 P.2d 145]; *Palmer* v. *Financial Indem. Co.,* 215 Cal.App.2d 419, 436 [30 Cal.Rptr. 204].)

█ The Hammonds state that they made a request for a specific finding on the issue of reasonableness. Their statement is not supported by the record.

CONTENTION: Mustard was in no way injured by the Hammonds' revocation of the oral license.

The court found "that to permit plaintiffs now to revoke said permission [to use the Hammond-Palmer road] would work a great and irreparable injury to defendants." This finding is amply supported by the evidence.

The Hammonds contend that the court's findings on this point is a conclusion and not specific; and that they had made a request for special findings thereon. We find no such request for such specificity in the record. The only related request is for a counter-finding that there was no great or irreparable injury and that the Pytel road constituted adequate access to the Mustard land. The requested finding, the court concluded, was not in accord with the weight of the evidence. It was properly denied.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.