Filed 1/27/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JAMES SCOTT RICHARDSON et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> GREG FRANC et al., <br><br> Defendants and Appellants. | A137815 <br><br> (Marin County <br> Super. Ct. No. C1V1005512) |

## I.

## INTRODUCTION

In order to access their home in Novato, California, James Scott Richardson and Lisa Donetti (respondents) had to traverse land belonging to their neighbors, Greg and Terrie Franc (appellants) on a 150-foot long road which was authorized by an easement for "access and public utility purposes." Over a 20-year period, both respondents and their predecessors-in-interest maintained landscaping, irrigation, and lighting appurtenant to both sides of the road within the easement area without any objection. Six years after purchasing the property burdened by the easement, appellants demanded that respondents remove the landscaping, irrigation, and lighting on the ground that respondents' rights in the easement area were expressly limited to access and utility purposes, and the landscaping and other improvements exceeded the purpose for which the easement was granted. Respondents brought this lawsuit seeking, among other things, to establish their right to an irrevocable license which would grant them an uninterrupted right to continue to maintain the landscaping and other improvements.

After a bench trial, the trial court ruled—irrespective of the terms of the easement––it would be inequitable to deny respondents an irrevocable license given their substantial

1

investment of time and money on the landscaping and other improvements and appellants' years of acquiescence. Appellants have filed this appeal, claiming the evidence did not support the granting of an irrevocable license in this case. We disagree, and find the court's decision was sound, equitable, and supported by substantial evidence.

## II.

## FACTS AND PROCEDURAL HISTORY

The relevant facts are stated in the light most favorable to respondents, the prevailing parties below, giving them the benefit of all reasonable inferences. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630-631.)

In 1989, Karen and Tom Poksay began building their home on undeveloped property at 2513 Laguna Vista Drive in Novato, California. The project included constructing and landscaping a 150-foot long driveway within the 30-foot wide easement running down to the site of their new home, which was hidden from the street. The driveway was constructed pursuant to an easement over 2515 Laguna Vista Drive, which was then owned by Dan and Jeanne Schaefer. The easement was for access and utility purposes only.

Landscaping along the driveway was important to the Poksays. They "envision[ed] it being natural and beautiful on both sides to be a nice entrance to the home." They hired a landscaper, who dug holes for plants and trees. Ms. Poksay then added plants and trees along both sides of the driveway in the easement area—hawthorn trees, Australian tea trees, daylilies, Mexican sage, breath of heaven, flowering pear trees, and evergreen shrubs.

The landscaper installed a drip irrigation system. It was part of a complex system, including a "major irrigation line" under the driveway, connected to water valve pumps that pumped water to separate drip lines for the individual trees and plants. The lines were operated through a central control box, located behind the house, that regulated a dozen different areas: one on each side of the driveway in the easement area, and the rest on their property. Water fixtures were also installed along the driveway for fire safety.

2

The Poksays also added electrical lighting along the driveway, later replacing the electrical lighting with solar lighting.

During the decade that the Poksays resided at the property Ms. Poksay regularly tended to the landscaped area, including trimming and weeding, ensuring the irrigation system was working properly, and replacing plants and trees as necessary. In addition to Ms. Poskay's own labor, the Poksays paid their landscaper to perform general maintenance, including checking the irrigation system, replanting, and digging holes for Ms. Poskay to add new plants. The Poksays also incurred water bills and other costs over the decade to maintain and improve the landscaping.

Respondents purchased the property in late 2000. As described by the trial court, after taking an on-site tour the property, "When Ms. Poksay sold the property to [respondents], the 30' wide easement was improved with a long sloping 12' wide driveway that was significantly enhanced by borders on each side adorned with trees, landscaping, irrigation, and lighting. A number of the trees had matured along with the landscaping to a beautiful natural entranceway running almost the entire length of the easement . . . , [T]he mature landscaping in 2000 included tea trees, oleander, Hawthorne, evergreen trees, and a variety of plants."

Over the years, respondents added new plants and trees, including oleanders, an evergreen tree, another tea tree, Mexican sage, lavender, rosemary, and a potato bush. Respondent Donetti testified that landscapers came weekly or every other week, and the landscapers spent 40 to 50 percent of their time in the easement area. In addition to hiring landscapers, respondents watered the landscaping every night for 45 minutes, although sometimes the irrigation system was turned off in the winter. During her testimony, respondent Donetti explained, "we've paid a lot of money to nurture it and grow it. It's beautiful. It has privacy. It's absolutely tied to our house value. It's our curb appeal."

Appellants purchased 2515 Laguna Vista Drive in 2004. Appellant Greg Franc admitted he knew appellants were improving the landscaping in the easement area, including employing landscapers. He even admitted that the trees were "beautiful and

3

provide a lot of color and [were] just all-around attractive." From 2004 to August 2010, appellants and respondents lived in relative harmony, with no indication by appellants that they wished respondents to stop maintaining and improving the easement landscaping.

It was not until late 2010—approximately six years after appellants bought the property and two decades after the landscaping and other improvements began—that appellants first raised a concern about the landscaping and other improvements. Prior to that date, no one had ever objected.

In late September or early October 2010, without any notice, appellant Greg Franc cut the irrigation and electrical lines on both sides of the driveway. He cut not only the lines irrigating the landscaping on the easement, but also those irrigating respondents' own property. The water valve pumps leading to the irrigation lines were disassembled as well. As part of these proceedings, the trial court granted respondents' motion for preliminary injunction and the irrigation system was restored.

On October 13, 2010, appellants sent a letter through counsel demanding that respondents remove all the landscaping and supporting systems from the easement area within five days. In response, respondents filed this lawsuit on October 18, 2010. The second amended complaint (SAC), which was filed on February 21, 2012, is the operative complaint for our purposes. The SAC alleged claims for an irrevocable parol license and equitable easement, and sought declaratory and injunctive relief.[1]

Following a bench trial and an on-site visit to the property, the court issued its statement of decision. While denying relief on the equitable easement cause of action, the court granted respondents' request for an irrevocable license, stating: "The Court finds by a preponderance of the evidence that [respondents] hold an irrevocable parol license for themselves and their successors-in-interest to maintain and improve

---

[1] Appellants filed a cross-complaint. None of appellants' claims succeeded at trial. Appellants have not appealed from the judgment on their cross-complaint so it is unnecessary to discuss it any further.

landscaping, irrigation, and lighting within the 30' wide and 150' long easement." This appeal followed.

## III.

## DISCUSSION

### A. Standard of Review

Appellants contend that all of the issues presented on appeal are matters of law and are governed by the de novo standard. However, as appellants acknowledge, the grant of an irrevocable license is "based in equity." After the trial court has exercised its equitable powers, the appellate court reviews the judgment under the abuse of discretion standard. (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 771 (*Hirshfield*).) "Under that standard, we resolve all evidentiary conflicts in favor of the judgment and determine whether the trial court's decision ' "falls within the permissible range of options set by the legal criteria." ' [Citations.]" (*Ibid.*)

### B. General Principles Governing the Grant of an Irrevocable License

Before we address the specific issues appellants raise on appeal, it is helpful to review the law governing the grant of an irrevocable license. "A license gives authority to a licensee to perform an act or acts on the property of another pursuant to the express or implied permission of the owner." (6 Miller & Starr, Cal. Real Estate (3d ed.2000) Easements, § 15:2, p. 15-10.) "A licensor generally can revoke a license at any time without excuse or without consideration to the licensee. In addition, a conveyance of the property burdened with a license revokes the license . . . ." (*Id.* at pp 15-10-15-11, fns. omitted.)

However, a license may become irrevocable when a landowner knowingly permits another to repeatedly perform acts on his or her land, and the licensee, in reasonable reliance on the continuation of the license, has expended time and a substantial amount of money on improvements with the licensor's knowledge. Under such circumstances, it would be inequitable to terminate the license. (6 Miller & Starr, *supra,* § 15:2 at p. 15-13.) In that case, the licensor is said to be estopped from revoking the license, and the license becomes the equivalent of an easement, commensurate in its extent and duration

5

with the right to be enjoyed. (See *Stoner v. Zucker* (1906) 148 Cal. 516, 520 (*Stoner*); see generally 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 430, p. 501.) A trial court's factual finding that a license is irrevocable is reviewed for substantial evidence. (*Hammond v. Mustard* (1967) 257 Cal.App.2d 384, 387-388 (*Hammond*).)

In the paradigmatic case, a landowner allows his neighbor the right to use some portion of his property—often a right of way or water from a creek—knowing that the neighbor needs the right to develop his property. The neighbor then builds a house, digs an irrigation ditch, paves the right of way, plants an orchard, or farms the land in reliance on the landowner's acquiescence. Later, after failing to make a timely objection, the landowner or his successor suddenly raises legal objections and seeks to revoke the neighbor's permissive usage. (See, e.g., *Hammond*, *supra*, 257 Cal.App.2d at pp. 386-387 [private road]; *Stepp v. Williams* (1921) 52 Cal.App. 237, 257 [water from spring]; *Stoner*, *supra*, 148 Cal. at p. 517 [irrigation ditch].)

On this factual pattern, the general principles governing the grant of an irrevocable license come into play: "[I]t is well settled in this state that 'where a licensee has entered under a parol license and has expended money, or its equivalent in labor, in the execution of the license, the license becomes irrevocable, the licensee will have a right of entry upon the lands of the licensor for the purpose of maintaining his structures, or, in general, his rights under his license, and the license will continue for so long a time as the nature of it calls for.'. . ." (*Cooke v. Ramponi* (1952) 38 Cal.2d 282, 286 (*Cooke*), quoting *Stoner*, *supra*, 148 Cal. at p. 520; accord *Noronha v. Stewart* (1988) 199 Cal.App.3d 485, 490 (*Noronha*).)

The facts in *Cooke*, *supra*, 38 Cal.2d 282, are similar to the facts in this case. In *Cooke*, the plaintiffs and their predecessors-in-interest had used a roadway over the defendants' property as the only usable roadway permitting access to plaintiffs' property for many years without interruption. (*Id.* at p. 283.) The use of the roadway was apparently always made with the consent of defendants' predecessors-in-interest. Several years before the commencement of the action, plaintiffs, with the consent of the

6

defendants' predecessors-in-interest, began improving the roadway by straightening portions of the road, causing scraping and surfacing work to be done, and culverts to be built. (*Id.* at p. 284.)

Over the following several years defendants' property changed ownership several times, but each new owner, including the defendants, permitted plaintiffs to maintain, repair and use the roadway at substantial expense to plaintiffs. Following these expenditures by plaintiffs, the defendants abruptly barricaded the roadway and notified the plaintiffs that they would no longer be permitted to use the roadway. (*Cooke*, *supra*, 38 Cal.2d at p. 285.) Plaintiffs then commenced their action seeking to establish their right to use of the road as a means of access to their property. (*Ibid.*)

The trial court in *Cooke*, *supra*, 38 Cal.2d 282, ruled in favor of the plaintiffs, granting them an "irrevocable license to use the road for the purposes of ingress and egress to and from their property," and the defendants appealed. (*Id.* at p. 286.) The Supreme Court affirmed the trial court's ruling that the license was irrevocable for so long as the nature of the use required the continuance of the license. (*Ibid.*)

In the instant case, the statement of decision serves as a road map outlining the evidence presented at trial and its corresponding application to the legal principles governing the grant of an irrevocable license. In a key finding, the statement of decision states: "Because [respondents] adduced sufficient evidence at trial concerning their substantial expenditures in the easement area for landscaping, maintenance, care, and physical labor, and because sufficient evidence was presented at trial to support that [respondents'] predecessor-in-interest, Ms. Poksay, also expended substantial sums in the easement area for landscaping, maintenance, care, and physical labor, and because, as the evidence and testimony at trial showed, that no objection was made to any of this by either [appellants] or [appellants'] predecessor-in-interest, Mr. Schaefer, over the course of more than 20 years, [respondents] have sufficiently met the requirements for an

7

irrevocable parol license for both [respondents], and [respondents'] successors-in-interest.  Both law and equity dictate this result."[2]

## C.  Contradictory Findings

Appellants primarily contend that the court's findings are inherently "contradictory and irreconcilable" because the court found that the facts did not support granting respondents an equitable easement but then, on the identical facts, the court granted respondents an irrevocable license.  Appellants claim "there is no way to reconcile these contradictory findings . . . ."  Consequently, they argue "the judgment is fatally defective and must be reversed."

The trial court found the facts of this case did not fit the definition of an equitable easement, because an equitable easement requires that the party claiming the easement must be without knowledge or means of knowledge of the facts.  (See *Medina v. Board of Retirement* (2003) 112 Cal.App.4th 864, 868 [party asserting estoppel must be ignorant of the facts].)  In its statement of decision the court found respondents "knew or should have known at the time of their purchase that the Grant Deed, on its face, describes the easement for 'access and utility purposes.'  The plants and irrigation system that [respondents] seek to maintain for the landscaping do not fall under the easement description.  Nor is this a case where [respondents] believed that these items were on their property and did not realize they were, in fact, on [appellants'] property.  Given [respondents'] knowledge, as evidenced by [respondent] Donetti's testimony concerning her reading of the Grant Deed, the evidence does not support a finding that [respondents]

---

[2]  Appellants claim the court's statement of decision was deficient "because the trial court failed to make <u>any</u> determination regarding key issues in the case."  (Original underscoring.)  These issues include pinpointing the exact point in time was the license created, and clarifying whether respondents reasonably relied on appellants' action or inaction when they spent money on the landscaping and other improvements.  However, the trial court was not required to make "specific factual findings" on every evidentiary point.  Rather, "a statement of decision 'need do no more than state the grounds upon which the judgment rests, without necessarily specifying the particular evidence considered by the trial court in reaching its decision.' [Citation.]" (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 50, fn. omitted.)

8

have a right to an equitable easement." However, while such knowledge precluded the court from granting respondents an equitable easement, it did not preclude the court from granting them an irrevocable license.

"The terms 'easement' and 'license' are sometimes used indiscriminately . . . . However, they are clearly distinguishable rights." (6 Miller & Starr, *supra,* § 15:2 at p. 15-11, fn. omitted.) A license is authority to do a certain act or acts upon another's land, *with full knowledge of the facts,* and may be implied from the relationship of the parties and from usage and custom. Many cases illustrate that if the owner of the land tacitly permits another party to repeatedly do acts upon the owner's land, without making any specific representations which would lead the party to believe any interest in the land was being created, and the party has in good faith expended money and labor on the strength of this tacit permission, a license to do such acts may be implied from the owner's failure to object. (*Stoner*, *supra*, 148 Cal. at p. 517; *Zellers v. State of California* (1955) 134 Cal.App.2d 270, 275 (*Zellers*); *Gravelly Ford Co. v. Pope-Talbot Co.* (1918) 36 Cal.App. 717, 738 (*Gravelly Ford*).)

The trial court recognized this distinction, pointing out that while an equitable easement required respondents to be "innocent in their encroachment," a license is a knowing act on someone else's property—with reasonable reliance "upon statements or conduct of another" granting permission for the encroachment. (*Hammond*, *supra*, 257 Cal.App.2d at p. 389.) Therefore, the fact respondents are charged with the knowledge that the landscaping and other improvements were not covered by the express terms of the easement is absolutely irrelevant to the court's grant of an irrevocable license. We see no inconsistency in the trial court's findings.

### D. Absence of Evidence of Express Permission

Appellants next contend the trial court erred in finding the evidence supported the creation of an irrevocable license because respondents' reliance on continued permission to landscape and make other improvements in the easement area was not reasonable as a matter of law. Appellants point out the evidence at trial revealed that throughout the history of the ownership of the property, there was never an actual request for permission

9

to make and maintain these improvements and express consent was never given. In essence, appellants contend that tacit permission by silence is insufficient to create an irrevocable license and that respondents were required to show an express grant of permission induced them into undertaking the improvements within the easement area.

Permission sufficient to establish a license can be express or implied. (*Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 36.) " 'A license to use real property may be . . . proved by circumstances such as tacit permission or acquiescence in acts already done . . . .' " (*Zellers*, *supra*, 134 Cal.App.2d at p. 275.) A license may also arise by implication from the acts of the parties, from their relations, or from custom. When a landowner knowingly permits another to perform acts on his land, a license may be implied from his failure to object. (*Lusk v. Krejci* (1960) 187 Cal.App.2d 553, 555 ["[A]n irrevocable license may be implied from circumstances such as tacit permission or acquiescence in the acts of the licensee"].) In other words, "a license may result from circumstances as, for instance, where a person has continued in possession for such a length of time and under such circumstances that objection might well have been expected had there been no assent. [Citations.]" (*Gosliner v. Briones* (1921) 187 Cal. 557, 561.)

In *Zellers*, *supra*, 134 Cal.App.2d 270, an irrevocable license was established in connection with the landowner's approximate 1-year failure to object to the conduct of the licensee. (*Id.* at p. 272.) Here, the undisputed evidence revealed appellants failed to object to the landscaping and other improvements for *6 years* before appellants first made their demand that the landscaping and other improvements be removed. Thus, with full knowledge that the road providing ingress and egress to respondents' property was landscaped, irrigated, and lit, and with full knowledge that respondents were maintaining these improvements on an ongoing basis, appellants said nothing to respondents. When coupled with the previous 14 years appellants' predecessors-in-interest acquiesced in these improvements, this constituted a total of *20 years* of uninterrupted permissive use of the easement area for the landscaping and other improvements. Therefore, we find the court had ample evidence to conclude that adequate and sufficient permission was

10

granted to respondents by appellants to maintain the extensive landscaping improvements on either side of the roadway.

### E.  Substantial Expenditures

Appellants next stress that for the license to be irrevocable, there must be substantial expenditures in reliance on the license.  (See, e.g., *Noronha*, *supra*, 199 Cal.App.3d at p. 490; *Cooke*, *supra*, 38 Cal.2d at p. 287; but see *Kaler v. Brown* (1951) 101 Cal.App.2d 716, 719 [small improvement did not call for expenditure which would have justified giving licensee permission to use the property permanently].)

In this regard, the trial court made the necessary findings that respondents "have expended substantial monetary sums to improve, maintain, landscape, and care for the easement area, including the retention of professional landscapers on a regular basis . . . ."  The court went on to explain that the "nature of the significant expenses incurred" by the original owners and "now by [respondents], as identified by testimony at trial, include monthly payment of water bills, landscapers, gardeners, plus replacement of plants and irrigation parts, and credible testimony that [respondent Donetti] personally works in the landscaping area."  Appellants assert the trial court's finding that substantial funds were expended was speculative because the expenditures "must be substantial in economic terms, and measurable by reference to a monetary amount."

As appellants emphasize, the cases finding an irrevocable license often include an approximate dollar amount of costly improvements.  (See, e.g., *Stoner*, *supra*, 148 Cal. at p. 517 [defendants, in reliance on the license, constructed a ditch for purposes of carrying water for irrigation spending over $7,000]; *Dinsmore v. Renfroe* (1924) 66 Cal.App. 207, 215 [license to construct a road given with express permission from co-owner, and license not revoked until hundreds of thousands of dollars were spent]; *Gravelly Ford*, *supra*, 36 Cal.App. at p. 738 [objection to building a canal over another's land made only after $80,000 incurred in construction costs].)

However, the fact that respondents in this case did not submit a specific dollar amount as to the cost of these improvements is irrelevant.  The evidence that was before the trial court provided the court with sufficient information to infer that the costs

11

incurred in maintaining the landscaping and other improvements were substantial. This includes respondents' testimony that they: (1) paid and continue to pay gardeners and landscape workers at least twice a month for maintenance work on the landscaping in the easement area; (2) paid and continue to pay for the water used by the irrigation system which waters the landscaped area for 45 minutes every evening (except during rainy months); (3) paid to replace landscaping as needed, including six oleander plants, an evergreen tree, and various other moderate sized plants; and (4) paid "a lot" for "electrical bills, costs for fertilizer, woodchips" and "solar lighting." In addition to these expenditures, the record also demonstrates respondents expended the "equivalent in labor" in assisting with the physical labor of maintaining the landscaping in the easement area. (*Cooke*, *supra*, 38 Cal.2d at p. 286.) The court's finding that there were substantial expenditures of both money and time is fully supported by this evidence.

### F. Duration and Scope of Irrevocable License

Appellants next challenge "the unlimited physical scope and duration of the license" granted by the trial court. They claim "the trial court, in derogation of equity and the law, decided that [r]espondents . . . should have sole and absolute discretion to decide what will happen on property that is owned by [appellants]." In making this argument, appellants ignore the fact that the trial court was vested with broad discretion in framing an equitable result under the facts of this case.

There is a long tradition in equity of according trial courts great latitude to " 'mold and adjust their decrees as to award substantial justice according to the requirements of the varying complications that may be presented to them for adjudication.' [Citation.]" (*Times-Mirror Co. v. Superior Court* (1935) 3 Cal.2d 309, 331; *Hirschfeld*, *supra,* 91 Cal.App.4th at p. 771.) Discretion is abused only when the trial court's decision "exceeded the bounds of reason." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

In exercising its discretion, the trial court weighed the testimony and documentary evidence, personally viewed the property, and resolved all factual issues. In determining the essential terms of the irrevocable license, the court also relied on the 20-year course

of conduct of the parties and their predecessors with respect to the installation and maintenance of the landscaping, irrigation and lighting within the easement. As it was empowered to do, the trial court exercised its broad equitable discretion and fashioned relief to fit the specific facts of this case. The court found "by a preponderance of the evidence that [respondents] hold an irrevocable parol license for themselves and their successors-in-interest to maintain and improve landscaping, irrigation, and lighting within the 30' wide and 150' long easement."

Appellants assert "it is wholly erroneous and grossly unfair to make the license *irrevocable in perpetuity*." (Original italics.) Appellants argue that a proper ruling in this case would be to grant respondents an irrevocable license but "with the license to landscape and garden limited in duration until [respondents] transfer title to anyone else or no longer reside on the property . . . ."

The principles relating to the duration of an irrevocable license were stated by our Supreme Court over a century ago, and these principles are still valid today. An otherwise revocable license becomes irrevocable when the licensee, acting in reasonable reliance either on the licensor's representations or on the terms of the license, makes substantial expenditures of money or labor in the execution of the license; and the license will continue "for so long a time as the nature of it calls for." (*Stoner*, *supra*, 148 Cal. at p. 520; see also *Cooke*, *supra*, 38 Cal.2d at p. 286; *Hammond*, *supra*, 257 Cal.App.2d at p. 388.) As explained in a leading treatise, "A license remains irrevocable for a period sufficient to enable the licensee to capitalize on his or her investment. He can continue to use it only as long as justice and equity require its use." (6 Miller & Starr, *supra*, § 15:2, p. 15-15.)

The evidence adduced at trial indicates respondents and their predecessors in interest expended significant money and labor when they planted and nurtured the landscaping abutting the roadway, installed sophisticated irrigation equipment throughout the easement area, and constructed lighting along the roadway. Under such circumstances the trial court did not abuse its discretion in concluding it would be inequitable to require respondents to remove these improvements when the property is

13

transferred, given the substantial investment in time and money and the permanent nature of these improvements.

Appellants next claim the court erred in granting respondents an irrevocable license "to maintain and improve landscaping, irrigation, and lighting within the 30' wide and 150' long easement." Appellants argue the irrevocable license should have been "strictly limited to the specific portions of the easement which had in the past been used by [r]espondents for gardening and landscaping." Again, the trial court is better equipped than we are to fashion equitable relief and we afford it considerable discretion. (*Hirshfield*, *supra*, 91 Cal.App.4th at p. 770.) Apparently, the trial court concluded, and we agree, that providing a level of certainty to the parties by defining the scope of the irrevocable license with the precise arithmetic measurements of the easement area, rather than attempting to describe more generally the location of areas previously landscaped, will prevent the parties from returning to court for further clarification as to the scope of the irrevocable license. Thus, the trial court did not abuse its discretion in fashioning relief that is not only fair and effective but is also calculated to avoid possible future litigation for the purpose of enforcement. (*Ojavan Investors, Inc. v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 394 ["[i]t is well established the judiciary possesses broad discretion in deciding the type of equitable relief to fit a case's particular circumstances. [Citation.]"].)

Lastly, we reject appellants' hyperbolic claim that in fashioning the scope and duration of the irrevocable license granted in this case, "the trial court, without exercising caution, took property that rightfully belonged to [appellants] and ceded it to [r]espondents—and their successors—forever."

This argument ignores that a license does not create or convey any interest in the real property; it merely makes lawful an act that otherwise would constitute a trespass. (See 6 Miller & Starr, *supra*, § 15:2 at p. 15-10 ["The licensee has a personal privilege but does not possess either an interest or right in the land or any estate in the property." (Fn. omitted.)]; *San Jose Parking, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1321,

14

1329 ["case law makes clear that licenses create *no* interest in real property" (original italics)].)

In accordance with this case law, the trial court properly characterized the effect of its decision, stating appellants "continue to have a fee title interest in the easement area. [Appellants'] property will continue to be subject to, and encumbered by, the existing recorded access and utility easement, and now will be subject to, and encumbered by, the irrevocable parol license." Far from granting respondents "an exclusive easement amounting to fee title" as appellants' claim, the court's decision simply maintains the status quo that has existed for over 20 years and was obvious to appellants when they purchased the property a decade ago.

## IV.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondents.

15

                                    _____

                                    RUVOLO, P. J.

We concur:

_____
REARDON, J.

_____
RIVERA, J.

| | |
|---|---|
| Trial Court: | Marin County Superior Court |
| Trial Judge: | Hon. Faye D'Opal |
| Counsel for Appellants: | Trombadore Gonden Law Group and David M. Gonden, Donald T. Ramsey |
| Counsel for Respondents: | Bien & Summers and Elliot L. Bien, Jocelyn S. Sperling |
| | Epstein Law Firm and Robert F. Epstein, Michael B. Lopez |

A137815, *Richardson v. Franc*